[Civ. No. 62914. Second Dist., Div. Five. Apr. 27, 1983.]

In re the Marriage of ALWAYNE W. and ARNOLD J. FRANSEN.
ALWAYNE W. FRANSEN, Appellant, v.
ARNOLD J. FRANSEN, Appellant.

COUNSEL

Robert R. Anderson for Appellant Wife.

Christen Brun Henrichsen for Appellant Husband.

OPINION

**STEPHENS, Acting P. J.**—This is an appeal from an interlocutory dissolution of marriage order awarding Alwayne Fransen (wife and appellant) spousal sup-

port in the amount of $70 per month, attorney fees in the amount of $1,500, and a 5 percent share of her husband's military pension. Alwayne contends the court abused its discretion in awarding spousal support of only $70 per month as well as awarding attorney fees of only $1,500. Cross-appellant and husband, Arnold Fransen, also appeals from this order insisting that portion of the order awarding wife Alwayne a 5 percent share of his military pension rights must be reversed.[1]

We find the trial court did err in the amount awarded for spousal support and attorney fees as well as its award of 5 percent of Arnold's military pension to Alwayne. We therefore remand to the trial court those portions of the order for reconsideration in accordance with this opinion.

## FACTS

Alwayne and Arnold were married on August 13, 1943, in San Jose, California. From this marriage, the Fransens have two children who have since reached their majority. At the time of their marriage Arnold was in the third year of a 25-year naval career. He retired from the Navy in 1966 after attaining the rank of Commander. Arnold began receiving a retainer payment (pension) upon his retirement.

In 1966, the Fransens moved from his California duty station to Oregon. There they purchased a home and lived together until their separation on November 27, 1966.

Alwayne was in California visiting their daughter when Arnold notified her of his desire to separate. Arnold later informed her that he wished a divorce and advised her not to return to Oregon. As a result, she remained in California.

In March 1967, Arnold moved to Idaho and filed for divorce on April 25, 1967. Alwayne retained California counsel in an attempt to obtain support benefits.

In the Idaho divorce petition, Arnold alleged that only a Ford pickup truck was within the jurisdiction of the court for the court to dispense in a settlement. Alwayne failed to appear upon her counsel's advice that Idaho could not adjudicate her property or support rights without her consent. A default was entered and the truck was awarded to Arnold. No provision for support was requested or granted. Three days later Arnold and Alwayne entered into an agreement whereby Alwayne accepted title to the Oregon house plus its furnishings.[2]

---

[1] In an air of brevity, the remainder of Arnold's argument on appeal is limited to the insistence that "[A]n appellate court will not disturb a trial court's implied fact findings supporting an order appealed from." (Citing *Bailey* v. *County of Los Angeles* (1956) 46 Cal.2d 132 [293 P.2d 449].)

[2] The house was later sold by Alwayne for a net earning of $10,900.

On June 6, 1967, Arnold remarried. In September of that year, Arnold and his new wife moved to Ohio. Arnold took a job with Ohio University. In May of 1970, Arnold and his wife moved to Texas.[3] There, too, Arnold engaged in new employment. In 1974, Arnold again relocated, this time in California, and engaged in new employment.

On September 24, 1974, Alwayne commenced a proceeding in Ventura County Superior Court for dissolution of marriage. Included in her petition for dissolution was a request for spousal support in the amount of $500 per month, a community share in Arnold's vested military pension, attorney fees, and costs.

Arnold answered the petition by alleging that no property was subject to disposition by the court because the Idaho decree of divorce "settled all issues in the matter." The court found the Idaho decree was valid and did effectively dissolve the marriage of the parties as of May 26, 1967. However, the court noted that other than the Ford pickup truck, the Idaho decree did not divide, allocate or mention any of the other property of the parties. The court therefore concluded Alwayne had not waived her claims to spousal support or Arnold's pension rights and that it had sufficient jurisdiction over the residue of the couple's property interests to make a disposition.

An interlocutory judgment of dissolution of marriage was granted to Alwayne on December 5, 1979.[4] The court ordered Arnold to pay Alwayne 5 percent of his military pension rights, spousal support in the sum of $70 per month, and attorney fees and costs in the sum of $1,585.10. From this decision, both Alwayne and Arnold appeal.

I.

*The $70 per Month Support Order.*

The interlocutory decree entered on December 5, 1979, ordered Arnold to pay spousal support of $70 per month commencing retroactively from December 1, 1977. The court based its decision upon its determination that Alwayne's financial statement indicated her needs to be $70 per month for spousal support.

Alwayne insists the court failed to follow the criteria enumerated in Civil Code section 4801, subdivision (a), in making its determination. We agree.

---

[3]Alwayne had originated actions in both Ohio and Texas in an attempt to gain support benefits. Both actions were dismissed for lack of personal jurisdiction over Arnold.

[4]The effect of the second declaration of dissolution is questionable since the California court specifically found the 1967 Idaho divorce was valid.

Section 4801, subdivision (a), of the Civil Code[5] sets forth the standards a court must follow in determining the proper amount of spousal support to be awarded. ■ Though wide discretion is vested in a trial court in determining this amount, the discretion exercised is not unlimited and may not be arbitrary. (*In re Marriage of Melton* (1980) 107 Cal.App.3d 559, 564 [165 Cal.Rptr. 753].) Any award is considered arbitrary if no reasonable judge would have made a similar order under the same circumstances. (*In re Marriage of Winick* (1979) 89 Cal.App.3d 525, 528 [152 Cal.Rptr. 635].) ■ Finally, we note the well admonished rule of appellate review which finds a presumption that the court performed its duties in a regular and correct manner absent a clear showing to the contrary. (See *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]; *Worsley* v. *Municipal Court* (1981) 122 Cal. App.3d 409, 415 [176 Cal.Rptr. 324].)

In the present case, little exists in the record regarding the court's evaluation process excepting its final determination and here, the record is anything but a model of clarity. Thus, where a presumption of validity may exist absent evidence of error or absent a clear record, that presumption does not require a complete abandonment of common sense, basic decency and simple justice. (*In re Marriage of Brantner* (1977) 67 Cal.App.3d 416, 420 [136 Cal.Rptr. 635].)

■ Where the record is clear, it reveals a trial court aware of the respective earning capacity of Alwayne (less than $4,200 per year) and Arnold (approximately $18,000[6] per year plus approximately $12,000 per year military pension); the 23-year length of their marriage; Alwayne's lack of skill or training in any trade or profession, her high school education, and her stated needs

---

[5]Section 4801, subdivision (a), of the Civil Code states in pertinent part:

"(a) In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for any period of time, as the court may deem just and reasonable. In making the award, the court shall consider the following circumstances of the respective parties:

"(1) The earning capacity of each spouse, taking into account the extent to which the supported spouse's present and future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported spouse to devote time to domestic duties.

"(2) The needs of each party.

"(3) The obligations and assets, including the separate property, of each.

"(4) The duration of the marriage.

"(5) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse.

"(6) The time required for the supported spouse to acquire appropriate education, training, and employment.

"(7) The age and health of the parties.

"(8) The standard of living of the parties.

"(9) Any other factors which it deems just and equitable."

[6]Alwayne maintains Arnold's earning capacity should be valued closer to $30,000 per year based upon cancelled checks submitted by him after trial.

based on her submitted financial declaration. The record also shows that while aware of these factors, it considered but one in awarding spousal support.

The court concluded "Mrs. Fransen's financial statement . . . indicates her *needs* to be $70 per month for spousal support."(Italics added.) In determining the amount of spousal support at $70, the court computed the difference between Mrs. Fransen's declared monthly expenses ($415) and her monthly income from working as a motel clerk ($348.97 rounded to $345).[7] It is in this mechanical application that the court overlooked one critical factor. The need (i.e., monthly expenses) of a party is but one aspect of section 4801, subdivision (a), that shall be considered by the trial court.[8] (Civ. Code, § 4801, subd. (a); cf. *Edwards* v. *Edwards* (1975) 52 Cal.App.3d 12, 15 [124 Cal.Rptr. 742].) However, the trial court must not limit itself to an award based entirely upon need. Section 4801, subdivision (a), unequivocally sets forth the criteria a court must follow regarding the respective parties. These criteria are quite clear and we need not restate them.

By awarding spousal support calculated by the difference between Alwayne's monthly expenses and her monthly income, the court's findings regarding the Fransen's respective earning capacities, their station in life, Mrs. Fransen's educational and work skill background, and the duration of the marriage, were effectively ignored. By this one act the court has completely frustrated the design and purpose of section 4801, subdivision (a).

The court must not simply recognize the criteria set forth in section 4801, subdivision (a), it must apply them. The error noted above clearly resulted in an award disproportionate to what a reasonable court would have made under the same circumstances. (*In re Marriage of Winick, supra,* 89 Cal.App.3d 525, 528.) Therefore, any new award should reflect an amount Alwayne would have been entitled to in the initial trial. (*In re Marriage of Jacobs* (1981) 126 Cal. App.3d 832, 835 [179 Cal.Rptr. 169].)

II.

*The Award of Attorney Fees.*

Alwayne contends that the trial court's order that Arnold pay her attorney $1,500 for fees is inadequate as a matter of law and requests this order be raised

---

[7]The record actually reveals a rounded net income of $245. We assume this figure merely evidences a scrivener's error and not an arithmetic miscalculation by the court.

[8]Section 4801, subdivision (a)(2), provides for the court to consider "The needs of *each party.*" (Italics added.) This the court apparently did not do since Mr. Fransen refused to file a financial declaration.

to the level of her original trial request of $11,855. Alwayne supports her position with the following arguments:

(1) That uncontradicted evidence shows she was represented by her attorney in pursuit of Arnold since 1967 to the present appeal;

(2) That her attorney spent 160.5 hours in preparation (valued at $60 per hour), not inclusive of trial time;

(3) That the already difficult nature of this case, including the ever changing areas of law such as military pension rights and foreign judgments, was compounded by Arnold's obstructive manner;

(4) The trial court found she was unable to pay and that Arnold could pay.

■ The law controlling an award of attorney fees in dissolution actions and its appellate review is well settled. " '. . . A motion for attorney fees and costs in a dissolution action is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse, its determination will not be disturbed on appeal.' " (*In re Marriage of Aylesworth* (1980) 106 Cal.App.3d 869, 880 [165 Cal.Rptr. 389], quoting from *In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296 [149 Cal.Rptr. 918].) Additionally, " '[t]he discretion invoked is that of the trial court, not the reviewing court, and the trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. [Citations.]' " (*Id.*, at p. 880.)

■ Though viewing the evidence most favorably in support of the trial court's order, we cannot in good conscience support this award. ■ *In re Marriage of Cueva, supra,* 86 Cal.App.3d at page 296 addresses the major factors to be considered in fixing a reasonable attorney's fee. These factors include " 'the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded [citation]; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed. [Citations.]' " [Quoting from *Berry* v. *Chaplin* (1946) 74 Cal.App.2d 669, 679 (169 P.2d 442).] In addition, the financial circumstances and responsibility undertaken by the paying spouse may be considered. (*Id.*, at p. 296.)

■ Alwayne's evidence in support of this award went uncontroverted. This case spanned at least nine and one-half years with the same attorney of

record.[9] Included in those nine and one-half years were fifteen pretrial court appearances, ten sets of written discovery, motions, briefs, preparation for seven aborted trial dates prior to November 3, 1977, and this appeal. Attorney Anderson testified that Alwayne had paid him $150 for those years of service. He stated he did not bill Mrs. Fransen because she could not afford to pay anything.

In its notice of modified intended decision, the court noted "It is a complex case requiring considerable research, investigation and many motions. Some of the activities of [Arnold] required additional time by [Alwayne's] attorney. Therefore, the court intends to award [Alwayne's] attorneys' fees in the sum of One Thousand Five Hundred Dollars ($1,500.00) and costs of Eight-five and 10/100 Dollars ($85.10) such sums to be payable forthwith by [Arnold]."

These findings clearly evidence the court's consideration of the major factors set forth in *Cueva.* Furthermore, the court's findings seemingly agree with Alwayne's contentions. We therefore are at a loss in understanding this award. We are more than cognizant of the wide discretion equity grants the court in determining fees. However, nothing in the record supports an award of only $1,500 for attorney fees. Neither do we find anything in the record that questions the reasonableness nor unreasonableness of Alwayne's request. No attorney should be paid a fee inconsistent with the work he has performed.

## III.

*The 5 Percent Military Pension Award.*

As of June 26, 1981, the Supreme Court of the United States has held that upon the dissolution of an officer's marriage, federal law precluded California courts from dividing an officer's military nondisability retirement pay pursuant to California community property law. (*McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728].) The court found California's community property laws preempted by Congress' intent that military retirement pay be a personal entitlement of the retiree. Accordingly, cross-appellant Arnold argues for reversal of that portion of the judgment awarding Alwayne 5 percent of his military pension rights. No doubt exists that under *McCarty,* this 5 percent award to Alwayne would mandate reversal. However, *McCarty* no longer represents the current status of the law. (*In re Marriage of Buikema* (1983) 139 Cal.App.3d 689, 691 [188 Cal.Rptr. 856].)

The Uniformed Services Former Spouses' Protection Act (Pub.L. No. 97-252 (Sept. 8, 1982), an amendment to title 10 of the United States Code),

---

[9]Attorney Anderson elicited cocounsel services for trial and asked for an additional $2,525 (inclusive of the $11,855 amount) for that trial and a 57-page final argument that followed.

provides for a "division of property (including a division of community property); and . . . payment of an amount, expressed in dollars or as a percentage of disposable retired or retainer pay, from the disposable retired or retainer pay of a member [of the armed forces] to the spouse or former spouse of that member." (§ 1408(a)(2)(B)(iii), (a)(2)(c).) Subdivisions (d)(5) and (e)(1) specifically state that "If a court order . . . provides for a division of property (including a division of community property) in addition to an amount of disposable retired or retainer pay, the Secretary concerned shall, subject to the limitations of this section, pay to the spouse or former spouse of the member, from the disposable retired or retainer pay of the member, any part of the amount payable to the spouse or former spouse under the division of property upon effective service of a final court order of garnishment of such amount from such retired or retainer pay . . . not [to] exceed 50 percent of such disposable retired or retainer pay."

Finally, 10 United States Code section 1006(b), specifically provides for subdivision (d) of section 1408 to apply *"without regard to the date of any court order."* (Italics added.) But "in the case of a court order that became final before June 26, 1981, payments under such subsection may also be made in accordance with such order as in effect on such date and without regard to any subsequent modifications." Therefore, "California law treating military retirement pensions as community property is no longer preempted." (*In re Marriage of Buikema, supra,* 139 Cal.App.3d at p. 691.)

Arnold takes issue[10] with the applicability of section 1408 to the present facts since the question of retired or retainer pay was not specifically addressed in the final Idaho decree. The California trial court concluded that the Idaho decree had "no effect on the rights of the parties to spousal support or to the military pension."

While the Idaho decree did dissolve the marriage of the Fransens, it failed to adjudicate questions regarding the parties community or quasi-community property rights. The California decree from which both Alwayne and Arnold appeal attempted to adjudge Arnold's military pension. A judgment was entered awarding Alwayne 5 percent of Arnold's military pension.

Section 1408(a)(2)(A), states: "(2) 'Court order' means a final decree of divorce, dissolution, annulment, or legal separation issued by a court, or a court ordered, ratified, or approved property settlement incident to such a decree (including a final decree modifying the terms of a previously issued decree of divorce, dissolution, annulment, or legal separation, *or a court ordered, ratified, or approved property settlement incident to such previously*

---

[10]Alwayne has not abandoned her appeal of this issue contrary to Arnold's contention.

*issued decree*) which— [¶] (A) is issued in accordance with the laws of the jurisdiction of that court." (Italics added.)

■ Applying the foregoing, the court's action falls within the purview of section 1408(a)(2).

Section 1408(c)(1), holds that "a court may treat disposable retired or retainer pay payable to a member . . . either as property solely of the member or as property of the member and his spouse *in accordance with the laws of the jurisdiction of such court.*" (Italics added.)

The trial court's award of five percent of Arnold's military pension failed to dispense the pension in accordance with established California community property/quasi-community property law.

Civil Code section 4800, subdivision (a), states that, "Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, the court shall, either in its interlocutory judgment of dissolution of the marriage, in its judgment decreeing the legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community property and the quasi-community property of the parties equally. For purposes of making such division, the court shall value the assets and liabilities as near as practicable to the time of trial, . . . [or] value all or any portion of the assets and liabilities at a date after separation . . . to accomplish an equal division of the community property and the quasi-community property of the parties in an equitable manner."

The court noted that from the date of marriage until September 1966, the Fransens lived in various states and foreign countries including California. For some 2½ years, or 10 percent of the 23-year marriage, the Fransens were domiciled in California exclusively. Based substantially upon these facts, it awarded Alwayne one-half (5 percent) of the 10 percent of Arnold's military pension it found to have been earned entirely in California. For purposes of dispensing with that portion of the pension earned exclusively in California as Alwayne's community property share, we are in accord. However, if 10 percent of the pension is community property, then the remaining 79.9 percent[11] of the pension earned during the marriage but outside of California was arguably subject to an equal division under California's quasi-community property law.

Civil Code section 4803, subdivision (a), states in pertinent part that "[A]ll real or personal property, wherever situated, heretofore or hereafter acquired

---

[11]Eighty-nine and nine-tenths percent of the total pension had accrued during the Fransen's marriage.

. . . [¶] by either spouse while domiciled elsewhere which would have been community property if the spouse who acquired the property had been domiciled in this state at the time of its acquisition" is quasi-community property. The trial court concluded that "Under *In Re Marriage of Roesch,* [(1978) 83 Cal.App.3d 96 (147 Cal.Rptr. 586)] [the] benefits could not have been *entirely* quasi-community property. Had both parties been in California seeking a marriage dissolution in California at that time, retirement benefits could have been quasi-community property and been subject to disposition by the court. [¶] [F]or retirement benefits under California law to be community or quasi-community property, there must be some significant connection with California during the course of the marriage. Personal property acquired by a spouse during the marriage while domiciled in a common law state does not lose its character as separate property of the acquiring spouse on a change of domicile to a community property state. However, a concept of quasi-community property on retirement benefits in a marriage dissolution could be asserted if two conditions existed:

"1. Both parties changed their domicile to California; and,

"2. Subsequent to the change of domicile, the spouses sought in a California court a legal alteration of their marital status. Absent these facts, the retirement personal property must be determined by the law of the state in which it accrued." (See *In re Marriage of Roesch, supra,* 83 Cal.App.3d at p. 107; italics added.)

In *In re Marriage of Roesch, supra,* 83 Cal.App.3d 96, a 26-year marriage, most of which was spent in Pennsylvania, ended in separation. Husband came to California immediately after separation and approximately seven months later, filed for dissolution. The trial court treated certain property still remaining in Pennsylvania as quasi-community property. The appellate court modified the judgment and found that both parties lived in Pennsylvania for virtually their entire married life, and seven months of residency by the husband was insufficient to afford California a greater interest in protecting the marital property of the parties than Pennsylvania's interest. That property in question was adjudicated husband's separate property.

Turning to the mechanics of *Roesch* as applied by the trial court, we find the court's application less than acceptable.

The first criterion of *Roesch* (83 Cal.App.3d at p. 107), relied upon by the trial court, was the requirement of finding that both parties had changed their domicile to California. Unlike *Roesch,* where the husband alone established his domicile in California, the trial court here made a specific finding that both par-

ties were domiciled in California.[12] Thus, the nonresidency which barred Mrs. Roesch's claim to a quasi-community property share is not present here.[13]

The second criterion of *Roesch, supra,* 83 Cal.App.3d at page 107, relied upon by the trial court, was whether the parties had sought any legal alteration of their marital status in a California court. The trial court apparently concluded they did not and thus declared that the property acquired by Arnold while domiciled outside of California was not subject to a quasi-community property division.

*Roesch* reiterated the requirement that "subsequent to the change of domicile the *spouses* [must have] sought in a California court legal alteration of their marital status." (Italics added.) (83 Cal.App.3d at p. 107.) We declare that this criterion of *Roesch* is satisfied when *either* spouse initiates a legal proceeding to alter the marital status. To require otherwise would enable one spouse to defeat a quasi-community property claim of the other spouse by merely refusing to seek a dissolution, annulment or legal separation.

Therefore, Alwayne has complied with the two requirements of *Roesch.*[14] The additional 79.9 percent of Arnold's pension earned during marriage but outside of California is subject to an equal division between the parties.

DISPOSITION

Unless the parties stipulate otherwise, a retrial shall be confined to those issues which we have found to have been incorrectly decided. (*In re Marriage of Steinberg* (1977) 66 Cal.App.3d 815, 820 [136 Cal.Rptr. 299].) Additionally, new findings of fact are deemed warranted based upon the parties' present

---

[12]Alwayne has been domiciled in California since 1967; Arnold has been domiciled in California since 1974.

[13]The Fransen's contacts with California were much more than incidental. The Fransens were married in California. Arnold's home at that time was in California. During a portion of Arnold's military service, the couple resided in California for a period of four years. While Arnold was overseas, Alwayne and the children remained in California for approximately two and one-half years. At the time Arnold moved to Idaho to seek a divorce, Alwayne remained in California. These are significant factors distinguishing the present facts from those of *Roesch.* Furthermore, this represents substantial support for the argument that California has much more than a minimum interest in protecting the parties' marital property.

[14]The California court determined that the Idaho termination of marital status was valid. There had been no disposition of property in the Idaho determination, however, and California had jurisdiction.

circumstances. (Cf. *In re Marriage of Carletti* (1975) 53 Cal.App.3d 989, 995 [126 Cal.Rptr. 1].) Costs on appeal are awarded to appellant.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied May 25, 1983, and the opinion was modified to read as printed above. The petition of appellant Husband for a hearing by the Supreme Court was denied July 20, 1983. Kaus, J., did not participate therein.