[No. A022669. First Dist., Div. Two. Apr. 14, 1986.]

In re the Marriage of JOANNA H. and ROBERT N. RABKIN.
JOANNA H. RABKIN, Appellant, v.
ROBERT N. RABKIN, Respondent.

COUNSEL

Robert L. Walker, Walker & Bull and Burnstein, Walker & Bull for Appellant.

Bryce C. Anderson for Respondent.

OPINION

ROUSE, J.—Joanna Rabkin (wife) appeals from an order which reduced the amount of monthly spousal support which Robert Rabkin (husband) was required to pay, effective December 1, 1982, and further provided that on November 30, 1989, unless another order was made, spousal support would be reduced to a reservation of jurisdiction by the court.

The pertinent facts are that on March 17, 1981, an interlocutory judgment dissolving the parties' marriage was filed. In this judgment, the court reserved jurisdiction to rule on all the remaining issues in the case, including spousal support, child support and the division of the community assets.

The parties had been married for over 20 years. There were two children born of the marriage, but only one of these children was still a minor when the dissolution action was commenced. Husband is a physician and wife had once worked as a laboratory technician, but had not been employed in any capacity since 1963. At the time of the dissolution proceedings, she already suffered from a degenerative disease of the lumbar spine and left knee. Since her medical condition prevented her from standing for any prolonged period of time, it was not possible for her to resume her work as a laboratory technician.

On May 27, 1981, in open court, the parties entered into an oral stipulation which was intended to settle all of the property division and support issues in the action. This agreement was subsequently reduced to writing and incorporated into an order of the court. Among the most significant assets awarded to husband was his medical corporation and a pension plan

which contained approximately $175,000 on the date when the parties separated. The most significant asset awarded to wife was her right to receive the first $214,000 in proceeds from the sale of the parties' large family home in Alameda.

The spousal support provisions of the parties' agreement[1] are directly related to certain other topics covered in the agreement. First, the spousal support provisions were designed to take into consideration the fact that the parties' one minor child, Halina, who was to reside with wife, would reach the age of 18 on January 19, 1982, but would not graduate from high school until June 1982. Thus, husband's obligation to pay child support, which the agreement set at $400 per month, would terminate on January 19, 1982, although Halina would be residing with wife until June 1982.

Second, the parties' agreement provided that their marital residence in Alameda would immediately be listed for sale at the price of $395,000. Wife was entitled to reside in the house until it was sold and was to be responsible for all normal expenses connected therewith, including taxes, insurance and maintenance. Upon the sale of the residence, wife was entitled to the first $214,000 from the proceeds of the sale, either in the form of cash if the downpayment was sufficiently large, or otherwise partly in cash and partly in installment payments of principal. The parties contemplated "a prompt sale" of the Alameda residence and wife's spousal support payments were geared toward a sale of the residence by December 31, 1981.

The manner in which wife's spousal support payments were tailored around the needs of the parties' minor child and the sale of the marital residence is evident from the varying spousal support payments set forth in the parties' agreement: husband was obligated to pay wife $2,100 per month until December 31, 1981 (on which date the house would presumably be sold, wife would be relieved of her obligation to maintain the house and she would also receive her share of the proceeds of the sale). In January 1982, wife was to receive spousal support in the amount of $1,500 per month, and she was also to receive the final $400 installment of child support for Halina. In the months of February through June 1982, spousal support was set at $1,900 per month (to accommodate the fact that wife would be supporting Halina until her graduation from high school, without the benefit of any child support). Commencing in July 1982, spousal support of $1,500 per month was payable to wife until her remarriage, the death of either party, or further order of the court.

---

[1]The parties' agreement actually consisted of two documents: a "Marital Settlement Agreement" and a "Letter Agreement" which is specifically mentioned in the "Marital Settlement Agreement." References herein to the parties' "agreement" are intended to include both of these documents.

The parties' agreement provided that spousal support was "established in contemplation of a prompt sale of said Alameda residence. Accordingly, said sale and the alternative housing (purchase or rental) required shall not constitute a substantial change of circumstances upon which to base a motion for a change in spousal support."[2] However, the parties also agreed that in the event that the marital residence had not been sold prior to December 31, 1981, wife could move to increase her spousal support, but that "[t]he maximum amount of support that [wife] will seek is $600 per month additionally until sale of the house. [Husband] will seek to limit the amount and the duration of such additional support only."

As of late November 1981, the marital residence had not been sold and only one offer, which was substantially below the asking price, had been received. On December 3, 1981, wife moved for an increase in spousal support. In her supporting declaration, wife averred that although she had fully cooperated with the listing broker, the condition of the real estate market was currently such that it was unlikely that the marital residence could be sold in the foreseeable future. She also averred that due to recent serious medical problems, which had required surgery on both her knees, she was physically unable to personally perform certain chores necessary to maintain the house and would have to periodically employ both a gardener and a cleaning person. She sought a spousal support increase of $600 per month, based upon the fact that the house had not sold, and an additional increase of $200 a month to cover the cost of employing a gardener and a cleaning person. Wife also sought a lump sum payment covering medical expenses which she had recently incurred and which were not covered by her medical insurance, and an order requiring husband to pay her uninsured medical expenses in the future.

On February 8, 1982, husband responded by moving for a reduction in spousal support, based upon the fact that he had recently lost virtually all of his clothing and other personal property in a mudslide. He claimed that it would cost $7,500 to replace his clothing and that he was attempting to obtain a low interest loan from his family or friends. He asked that wife's spousal support be reduced from $1,900 to $1,500 a month.

On February 18, 1982, husband filed another motion, seeking to reduce spousal support as of July 1982 from $1,500 to $1,250 per month.

---

[2]The parties' agreement also identified two other events which would trigger no change in spousal support. It was agreed that an increase in husband's gross earnings from $60,000 to $75,000 per year "shall not constitute a substantial change of circumstances upon which to base a motion for increased support"; and it was also agreed that if wife were to become employed, her first $750 per month of gross earnings "shall be received by her without adjustment of spousal support payable by Husband . . . ."

On June 10, 1982, the trial court ruled on the parties' respective motions. The court ordered that spousal support would be increased from $1,500 to $1,750 per month as of June 1982. The court further ordered that husband would pay 60 percent of all medical and dental expenses incurred by wife prior to January 1982 which were not covered by insurance, and that commencing in January 1982 spousal support was increased to include 60 percent of wife's reasonable and necessary medical and dental expenses subsequently incurred which were not covered by insurance, plus 60 percent of the utility bills and maintenance expenses on the marital residence as long as husband's share of those expenses did not exceed $200 per month. In its order the court expressly provided that all of these spousal support increases were to continue until the sale of the family residence or the occurrence of certain other specified events. The court's order also stated, in pertinent part, that "Sale of the family residence shall be deemed a change in circumstance entitling either party to seek a new order regarding spousal support."

On July 8, 1982, wife moved for reconsideration of certain portions of the June 10 order. Among other things, wife sought to have the court delete the provision stating that the sale of the marital residence would constitute a change of circumstances upon which a motion for a modification of spousal support could be made. She contended that this provision was directly in conflict with a provision in the parties' written agreement to the effect that the sale of the marital residence should *not* be deemed a change of circumstances justifying a modification in spousal support.

On August 24, 1982, husband also sought reconsideration of the June 10 order. He claimed that his financial condition was still poor and that the parties' written agreement contemplated that wife would be responsible for her own medical expenses and for the expenses of maintaining the marital residence until such time as it was sold.

Although the parties later filed further documents in support of their respective motions for reconsideration and modification of the June 10 order, the order remained in effect and was not modified in any way. Neither party appealed from that order.

On September 10, 1982, husband moved for an order compelling the sale of the marital residence. Although wife opposed the motion, it was granted. Thereafter, the house was sold, with the escrow closing on November 1, 1982. The purchase price was $300,000, with a $100,000 cash downpayment. Wife received $55,000 of the downpayment and paid $10,000 of that sum to her attorney in payment of legal fees. She was also entitled to receive monthly payments of $1,792.84 on a seven-year promissory note secured

by a first deed of trust on the house. Wife entered into a contract to purchase a new home for $150,000. She intended to use, as a downpayment on her new home, the remaining $45,000 which she had received when the marital residence was sold. She estimated that her monthly mortgage payments on the new house would come to approximately $1,300. Wife had also sold a 10-acre lot for $15,000 in cash.

On November 19, 1982, by minute order, the court directed that as of November 1, 1982, the provisions of the June 10 order, which required husband to pay 60 percent of wife's uninsured dental and medical expenses and 60 percent of certain expenses connected with the marital residence, were rescinded. In addition, as of December 1, 1982, spousal support was decreased to $1,250 per month continuing until the death of either party, wife's remarriage or further order of the court. In the absence of any such further order, spousal support was to be reduced to a reservation of jurisdiction on November 30, 1989.

Husband's counsel was directed to prepare an order consistent with the court's minute order. He subsequently did so, and the latter order was signed and filed on March 7, 1983. On May 5, 1983, wife appealed from those portions of the latter order which reduced spousal support to $1,250 per month as of December 1, 1982, and further reduced spousal support to a reservation of jurisdiction on November 30, 1989.

I.

■ Wife's first contention on appeal is that the trial court committed reversible error because it based its decision to reduce spousal support at least partly upon the sale of the marital residence, thus ignoring the fact that the parties' written agreement expressly provided that the sale of that residence "shall not constitute a substantial change of circumstances upon which to base a motion for a change in spousal support." Wife points out that Civil Code section 4811, subdivision (b), provides, in pertinent part, that the provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order "except to the extent that any written agreement, or, if there is no written agreement, any oral agreement entered into in open court between the parties, specifically provides to the contrary." Wife cites abundant California case law upholding the enforceability of agreements providing for nonmodifiable spousal support awards. While she concedes that the written agreement here in issue did not purport to make spousal support "irrevocably and unconditionally non-modifiable," she asserts that a property settlement agreement providing that modification of spousal support cannot be based upon the occurrence of certain specified events is equally valid and enforce-

able. Wife premises this argument upon the language of Civil Code section 4811, subdivision (b), and case law to that effect. (See, e.g., *Plumer* v. *Plumer* (1957) 48 Cal.2d 820, 825-826 [313 P.2d 549].)

Wife asserts that it is clear that the trial court did base its order reducing spousal support at least partially upon the sale of the marital residence because the court so stated at a hearing held on November 17, 1982, when the parties argued their respective positions on husband's motion to reduce spousal support. At that time, the court expressed the view that it considered itself bound by two other provisions in the parties' agreement to the effect that wife could not obtain an increase in spousal support based upon the fact that husband's gross earnings had increased to $75,000 per year, and that husband could not obtain a decrease in spousal support based upon the fact that wife had become employed and was earning $750 per month. (See fn. 1, *ante,* at p. 1075.) However, the court indicated that it did not consider itself bound by the provision pertaining to the sale of the marital residence. The court characterized that provision as merely imposing a limitation to the effect that wife's "*purchase of a home* is not a substantial change of circumstances upon which to base a motion for change in spousal support." (Italics added.) The court went on to explain that the provision in question could reasonably be interpreted as precluding wife from basing a motion for increased spousal support upon the fact that she had bought "'a bigger and more expensive house'" following the sale of the marital residence. The court then concluded, "I think it's a matter of the Court's discretion based upon a change in circumstances which has occurred here: one, the sale of the home; two, some expenses incurred by [husband] as a result of a hill falling on his [rented] house and some other evidence that's come to light here today with respect to funds available to [wife]." The court also expressed its agreement with husband's counsel that the mortgage payments which wife was to receive from the purchasers of the marital residence could be taken into consideration in deciding whether her spousal support should be reduced.

Wife argues that these comments by the trial judge make it clear that he not only decreased spousal support in direct violation of the prohibition set forth in the parties' written property settlement agreement, but that he also based such reduction upon two other improper considerations: the fact that wife had sold an undeveloped parcel of real property for $15,000 and the fact that she would receive approximately $1,800 per month in mortgage payments now that the marital residence had been sold. In effect, she claims that the trial court's reliance upon these factors in reducing spousal support constituted an abuse of discretion because the court was thereby penalizing her for receiving her fair share of the community property.

Husband denies that the spousal support reduction was contrary to the parties' agreement. He takes the position that, since the parties' agreement provided that wife could apply for an increase in spousal support of up to $600 per month in the event that the marital residence did not sell by December 31, 1981, "Common sense dictates that the parties could not have intended that [wife] keep this additional support once the family home sold, and the maintenance expense no longer existed."

Husband's own analysis of the situation serves to demonstrate the lack of merit in his position. He contends that the parties' agreement should be reasonably interpreted to mean that wife was temporarily entitled to increased spousal support to cover the costs of maintaining the family residence in the event that it had not sold by December 31, 1981, but that the justification for such additional support ceased to exist when the house sold and wife was no longer burdened with the maintenance expenses.

Certain conclusions can logically be drawn from provisions in the agreement. The parties clearly intended that the sale of the house, whenever it occurred, would have no effect upon spousal support, but that a *delay* in the sale of the house might justify a temporary increase of up to $600 per month in spousal support payments to cover the cost of maintaining the house until it sold. That this $600 figure represented the parties' estimate of the monthly cost of maintaining the house is evident from the fact that if no delay in the sale had occurred and the house *had* sold by December 31, 1981, the total monthly sum due wife to cover her own expenses and those of her daughter would immediately have decreased by $600, from $2,500 to $1,900, in January 1982. In July 1982, when her daughter would presumably no longer be living with her, a further reduction would occur and wife's spousal support would thereafter be $1,500, in the absence of a change of circumstances other than the three events which the parties had agreed would not justify a change in spousal support. Thus, it is clear that, had the marital residence been sold by December 31, 1981, wife's permanent spousal support was intended to remain indefinitely at $1,500 per month absent a material change in the needs or resources of the parties, the death of either of them, or the remarriage of wife.

According to our interpretation of the parties' agreement, the November 19 order was improper. The agreement provided for a temporary increase in spousal support to cover maintenance expenses on the marital residence in the event of a delay in the sale of that residence. Any such increase was intended by the parties to be temporary and to be subject to termination once the house sold. It was entirely appropriate, once the house had sold, for the trial court to terminate the provisions of the June 10 order which required husband to contribute up to $200 per month in the form of in-

creased spousal support toward the maintenance of the house. However, we find no justification for the court's decision to make an additional reduction of $250 per month in wife's spousal support as of December 1, 1982, and to reduce spousal support to a reservation of jurisdiction in 1989.

As previously pointed out, wife's permanent spousal support was set at $1,500 per month, and the parties agreed that the sale of the marital residence would not constitute grounds for a change in spousal support. The parties contemplated nothing beyond a temporary increase in spousal support which was to be granted only in the case of a delayed sale and which was to terminate when the sale took place. Had there been no delay in sale, wife would have commenced receiving permanent spousal support in the amount of $1,500 in July 1982.

At the hearing held on November 17, 1982, the trial court stated that it was basing its decision upon three factors: the sale of the marital residence; husband's prior expenses necessitated by the loss of his personal property in a mudslide; and the fact that wife had certain additional funds available to her because she had sold an undeveloped parcel of real property for $15,000. The court also made it clear that its reliance upon the sale of the marital residence as a factor justifying a reduction in spousal support included the fact that as a result of that sale, wife would be receiving approximately $1,800 per month in mortgage payments from the purchasers of the home.

We have concluded that none of these factors furnished a proper basis for the trial court's $250 per month reduction in wife's permanent spousal support. As for the sale of the family residence and wife's resulting right to receive approximately $1,800 in monthly mortgage payments, such right constituted the single major asset awarded to wife as her one-half share of the community property. The parties' agreement, which was very carefully drafted by skilled attorneys, provided that wife would receive her share of the community property *and* spousal support. It makes no more sense to reduce wife's spousal support because she received her rightful share of the community property than it would to increase wife's spousal support because husband received his rightful share of the community property. (In fact, husband testified at the Nov. 17, 1982, hearing that his pension plan, which was allegedly worth $175,000 on the date of separation, was now worth between $260,000 and $270,000.) In any event, the parties' agreement expressly provided that the sale of the marital residence could not be considered a change in circumstances justifying a modification of spousal support.[3]

[3]Since the personal property loss sustained by husband as a result of a mudslide had earlier been rejected by the court as a basis for reducing spousal support, we are inclined to discount the possibility that such event could warrant the reduction in spousal support which was ordered on November 19.

■ Finally, it was improper for the trial court to place any reliance upon the fact that wife had sold an undeveloped lot, which was part of her share of the community property, for $15,000 in cash. The transformation of one nonincome-producing asset into another constitutes no basis for a modification of spousal support.[4] (*In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 635 [120 Cal.Rptr. 654].)

■ We conclude that this case runs afoul of the settled rule that a trial court, while possessing broad discretion to modify spousal support, cannot do so in the absence of a *material* change of circumstances occurring subsequent to the last prior order. (*In re Marriage of Kuppinger, supra,* 48 Cal.App.3d 628, 633.) We find no such material change in this instance.

## II.

■ Husband contends that, even if the trial court erred by treating the sale of the marital residence as a change in circumstances, wife is nevertheless precluded from arguing the point on appeal because the order of June 10, 1982, which temporarily increased spousal support, contained a provision to the effect that a sale of the family residence "shall be deemed a change in circumstance entitling either party to seek a new order regarding spousal support." He claims that, because wife did not appeal from the June 10 order, under the doctrine of res judicata the language in that order was binding on the parties in all subsequent proceedings. ■ Also, husband contends that wife is equitably estopped from attacking that language in the June 10 order because she accepted the benefits of that order, which temporarily increased her spousal support.

■ Neither theory upon which husband relies is applicable here. The very cases upon which he relies make it clear that the principle of res judicata is applicable only to issues actually before the court and necessarily decided by it. (*Wodicka* v. *Wodicka* (1976) 17 Cal.3d 181, 188-189 [130 Cal.Rptr. 515, 550 P.2d 1051]; *Rasmussen* v. *Rasmussen* (1969) 275 Cal.App.2d 443, 450-451 [79 Cal.Rptr. 842].) In *Rasmussen, supra,* the appellate court pointed out that where the sole issue before the trial court was how much the husband owed and not whether he owed alimony or support which was an inseparable part of the consideration for the property

---

[4] Wife gave contradictory testimony at the November 17 hearing concerning the sale of the undeveloped parcel of real property. Initially, she testified that she had received no offers on the property and had not transferred it to anyone, but later admitted that she had sold it in June for $15,000 in cash. While this testimony would entitle the trial court to view wife as a witness of doubtful credibility, it would not afford a valid basis for a reduction in spousal support which was in violation of the parties' written agreement and also based upon improper considerations.

settlement agreement, the parties were not bound by the trial court's characterization of the husband's obligation as "alimony." (*Id.*, at p. 450.) Likewise, in *Stanson* v. *Mott* (1976) 17 Cal.3d 206, 212 [130 Cal.Rptr. 697, 551 P.2d 1], the plaintiff was held not to have been collaterally estopped from challenging certain language, contained in an appellate court decision, which was irrelevant to that decision and therefore pure dicta.

In this instance, the sole question before the trial court when it rendered the June 10 order was whether wife was entitled to a temporary increase in spousal support because the marital residence had not sold by December 31, 1981, and she was in need of additional funds in order to continue to properly maintain the home until it was sold. Such temporary relief was authorized by the parties' written agreement and had nothing to do with the question of whether the sale of the residence would constitute a change of circumstances for the purpose of further spousal support proceedings. (The parties' written agreement expressly provided that it would not.) Thus, the statement in the June 10 order characterizing the sale of the marital residence as a change of circumstances justifying a future modification of spousal support was unnecessary to the court's decision and purely gratuitous. ██ ██ Under such circumstances, the doctrine of res judicata is inapplicable; also, there would appear to be no valid basis for holding that wife was equitably estopped from challenging the language in question because she accepted the modest $200 increase in monthly spousal support which was granted her for the purpose of maintaining the marital residence.

The order of March 7, 1983, is reversed and the matter remanded for further proceedings consistent with the views expressed herein. If, upon such remand, it should be determined that the order of March 7, 1983, deprived wife of money which she was entitled to receive, the trial court should accomplish equitable restitution of the money so lost. (*In re Marriage of Jacobs* (1981) 126 Cal.App.3d 832, 835 [179 Cal.Rptr. 169].) Also, the trial court might deem it appropriate to make new findings of fact based upon the parties' present circumstances. (*In re Marriage of Fransen* (1983) 142 Cal.App.3d 419, 431-432 [190 Cal.Rptr. 885].)

Kline, P. J., and Smith, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 13, 1986.