[No. D004665. Fourth Dist., Div. One. July 15, 1987.]

In re the Marriage of SUZANNE M. and JOSEPH F. KENNEDY.
SUZANNE M. KENNEDY, Appellant, v.
JOSEPH F. KENNEDY, Respondent.

1634

**COUNSEL**

Sharron Voorhees for Appellant.

Mitchell, Keeney, Barry & Pike and Gerald L. Barry, Jr., for Respondent.

**OPINION**

**TODD, J.**—Suzanne Kennedy appeals the trial court's modification of a spousal support order. The modification was based in large part on Suzanne's failure to invest capital assets awarded in the division of community property in income-generating investments. We reverse.

FACTS

Suzanne and Joseph Kennedy separated in February 1981 after nearly 20 years of marriage. There are three children of this marriage, one of whom was an adult at the time of separation. Suzanne was a homemaker; Joseph, a physician. At the time of the trial in November 1982, Suzanne was unemployed, but she subsequently completed training as a paralegal. Following the trial, Joseph was ordered to pay $2,500 per month in spousal support. Final judgment of dissolution of marriage was entered on July 12, 1984. The judgment included a written stipulation by the parties that contained (1) a division of the community property assets and debts and (2) a provision concerning the sale of the family residence at 2660 St. Tropez Place, La Jolla, and a condominium, also located in La Jolla. The stipulation provided the St. Tropez Place residence and the condominium would be sold forthwith and the proceeds used to equalize the division of community assets and debts. Suzanne was to have sole use of the St. Tropez Place residence until it was sold and Joseph was to have sole use of the condominium. The stipulation also provided Suzanne would have the opportunity to purchase the condominium. The parties were unable to agree on certain issues, including spousal support. The final judgment of dissolution provided: "13. IT IS ORDERED that Respondent pay to Petitioner as and for spousal support the

sum of two thousand five hundred ($2,500.00) dollars per month beginning December 1, 1982, (with the November 1982 payment being prorated from November 15, 1982 and paid December 1, 1982, along with the $2,500.00 payment) payable on the first day of each and every month thereafter until the first occurrence of the following: [¶] a. The community residences are sold and the income from Petitioner's investment(s) equals $2,500.00, at which time the spousal support shall be reduced to zero; or, [¶] b. Further order of this Court."

On December 6, 1985, the trial court conducted a hearing after Suzanne sought a wage assignment, modification of spousal support and attorney fees and Joseph sought modification or termination of spousal support. At that time, the St. Tropez Place residence had been sold, but the condominium had not been sold. Joseph had purchased Suzanne's interest in the condominium for approximately $4,000. After the St. Tropez Place residence was sold, Suzanne, with her $250,000 in sale proceeds, bought a new home in La Jolla for $225,000, with a $117,000 down payment and monthly payments of $1,250. She purchased $10,000 worth of furnishings for the new home. The remainder of her $250,000 in proceeds—the court calculated it to be $123,000—was invested in a stock portfolio with the firm of Shearson Lehman Brothers. The investment was intended to maximize growth, with any money realized being reinvested in the account and no dividends or monthly income being paid out.

In July 1985, Joseph stopped making spousal support payments based on his interpretation of paragraph 13 of the final judgment that spousal support was to be reduced to zero.

Suzanne filed an order to show cause and declaration for contempt and a companion order to show cause for a wage assignment for spousal support and attorney fees. Joseph filed an order to show cause requesting (1) an interpretation of the judgment of dissolution and (2) a modification or termination in spousal support. Suzanne filed an additional order to show cause requesting spousal support be increased to $3,500 per month. The trial court at the December 6, 1985, hearing made the following findings: (1) Suzanne's needs have increased because of inflation to $3,000 per month. She generates a $900 monthly income as a paralegal, which leaves her needs at $2,100 per month; (2) If Suzanne had invested the money she received from the dissolution to generate income, she would be receiving $2,080 a month income; (3) Suzanne is entitled to set aside one-half of the $2,080 for her own retirement; (4) Spousal support is in arrears $2,500 per month for July, August and September 1985; and (5) The court lost jurisdiction over Suzanne's motion for contempt when the warrant of attach-

ment ordered September 17, 1985, and held until October 9, 1985, was not reissued on October 9, 1985.

The court made the following orders: (1) spousal support is reduced to $1,000 per month effective October 9, 1985; (2) each party shall pay his own attorney fees; and (3) the request for wage assignment for spousal support and arrears is denied.

### DISCUSSION

Suzanne contends the trial court erred in: (1) considering income which she could have earned from capital assets awarded her in the dissolution proceeding; (2) failing to apply the criteria of Civil Code section 4801, subdivision (a);[1] (3) refusing to issue a wage assignment, and (4) failing to award her attorney fees and costs.

### I

■ As a preliminary matter, we restate well-settled general rules regarding modification of spousal support: "In exercising its discretion the trial court must take into consideration both the needs of the wife and the ability of the husband to meet those needs. [Citations.] The '[r]easonable needs of a wife conmensurate with her station in life are a circumstance the court should consider in determining a just and reasonable amount of her support [citations]; and embrace more than bare necessities. [Citations.]' Although a trial court has broad discretion in awarding or modifying an award of spousal support, it is without authority to modify an order for spousal support unless there has been a material change of circumstances subsequent to the last prior order." (*In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633 [120 Cal.Rptr. 654].)

Furthermore, the Legislature has established certain factors to be considered by the court in determining reasonable spousal support. At the time of the December 6, 1985, hearing, these were: " . . . (1) The earning capacity of each spouse . . . . [¶] (2) The needs of each party. [¶] (3) The obligations and assets, including the separate property, of each. [¶] (4) The duration of the marriage. [¶] (5) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse. [¶] (6) The time required for the supported spouse to acquire appropriate education, training, and employment. [¶] (7) The age and health of the parties. [¶] (8) The standard of living of the

---

[1] All statutory references are to the Civil Code unless otherwise noted.

parties. [¶] (9) Any other factors which it deems just and equitable." (Former § 4801, subd. (a).)

In ordering spousal support in the final judgment of dissolution, the trial court obviously anticipated that the proceeds from the sale of the two residences would be sufficient to generate income of $2,500 per month. It is also clear it was the trial court's intent that Suzanne invest her proceeds to generate a monthly income of $2,500 so Joseph's spousal support obligation would be eliminated. Indeed, at the December 6, 1985, hearing, the trial court observed: "Part of my reasoning in making the order I did and, as I indicated from the beginning, I thought that she needed $2,500 a month, that that would be fair, and I had hoped the amount she generated from her share of the community assets would eventually generate $2,500 a month. . . . [¶] I based part of it on my belief that that money could generate, itself, so that Dr. Kennedy wouldn't have to have his onus for a long period of time on the basis that, of course, she had to have a place to live, and she was happy with the idea of living in the condominium." The trial court then asked why Suzanne had not bought the condominium rather than purchase the new home. The court also inquired about the monthly mortgage payment for the condominium and was told by Joseph it was $1,270. The court observed: "I am of the firm opinion that Mrs. Kennedy is entitled to live where she wants to live. If she wants to make house payments a little higher because this is the type of area she wants to live in, she's entitled to do that." ■ We agree with the trial court's statement that Suzanne's purchase of the house was reasonable. First, the monthly payment of $1,250 was comparable to the mortgage payment on the condominium so there was no added drain on her monthly income. She was entitled to live at the same standard of living that she had become accustomed to during the marriage. (See *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 897 [101 Cal.Rptr. 295].) And, considering the fluctuations in the real estate market in this community, Suzanne's purchase in effect stablized her living costs to a large degree.

■ However, regardless of how clear the court's intent was, two issues immediately arise with regard to paragraph 13 of the order: the conditional nature of the language employed; and its overall validity.

Paragraph 13 provides the spousal support will terminate when the "income from Petitioner's investment(s) equals $2,500.00 . . . ." This assumes that the petitioner will make investment(s). Yet the order does not direct Suzanne to invest her proceeds. There is no express language requiring Suzanne to make any investments, let alone income-generating ones. A reasonable interpretation of the language in paragraph 13 is that *if* petitioner invested the proceeds, respondent's support obligation would drop to

zero *when* the investments produced a $2,500-a-month income. This is the interpretation we adopt.[2]

Since the trial court's December 6, 1985, order reducing spousal support to $1,000 was based on the erroneous assumption that the judgment of dissolution obligated Suzanne to make investments, we must reverse and remand this case for a new determination of spousal support based on Suzanne's current needs. Accordingly, we find it unnecessary and somewhat superfluous to decide the question of whether the court can order a spouse to invest his or her proceeds from the division of the community in a particular manner—to wit, to generate a specified amount of income upon pain of losing spousal support.[3]

## II

■ Of course, one of the goals of the Family Law Act modifications of 1969 is to, where possible, allow the parties to develop their lives free of obligations to each other. However, this is overshadowed by the primary goal of assuring that the supported spouse can provide for his or her reasonable needs. (See *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41].)

No one disputes that the community assets that were awarded to Suzanne became her separate property.[4] Joseph claims Suzanne should generate income from this separate property sufficient for her expenses. However, it has not been established that Suzanne's income met her needs. At the time of the December 6, 1985, hearing, the court said her reasonable needs had increased from $2,500 per month to $3,000 per month.[5]

■ While we conclude Suzanne was not obligated to invest her separate assets in a certain manner, we are not suggesting a trial court cannot consider separate assets and the manner in which they are utilized in deter-

---

[2] Otherwise, the order would improperly merge the notion of spousal support—a distinct legal obligation—with a division of community assets.

[3] This apparently is an issue of first impression. The trial court did not cite any authority— nor does counsel—to sustain an order obligating a spouse to invest his or her share of the community assets in income-producing property. We note in passing that the cases most clearly analogous are authority for the clear delineation that exists between property division and spousal support and would tend to support Suzanne's position that the trial court does not have the authority to make such an order. (See *In re Marriage of Kuppinger, supra,* 48 Cal.App.3d 628; *Sammut* v. *Sammut* (1980) 103 Cal.App.3d 557 [163 Cal.Rptr. 193]; *In re Marriage of Rabkin* (1986) 179 Cal.App.3d 1071 [225 Cal.Rptr. 219]; see also *Overson* v. *Overson* (Wis.App. 1985) 370 N.W.2d 796 [370 N.W.2d. 796].)

[4] As such, they can properly be considered, along with other factors, in determining spousal support under section 4801, subdivision (a), which is discussed *infra.*

[5] The income and expense declaration, however, shows a figure of more than $4,000.

mining spousal support. Indeed, under section 4801, subdivision (a)(3), the trial court must consider, among other things, "[t]he obligations and assets, including the separate property, of each" party.

What the trial court is left with is a delicate balancing procedure in which Suzanne's rights to full enjoyment of her separate property must be reconciled with Joseph's rights not to be burdened by an open-ended obligation. Having justified the purchase of the new home and having set aside a certain portion for retirement, the trial court certainly can consider the manner in which Suzanne utilized the balance of her property division without requiring her to invest it at 8 percent or 10 percent. But this is not what the trial court did here. The trial court calculated that Suzanne should have generated $2,080 in monthly income from investing the money she received from the sale of the St. Tropez Place residence. In arriving at the $2,080 figure, the court used the full $250,000 figure and a 10 percent return. This calculation is inconsistent with the court's earlier remarks at the December 6, 1985, hearing in which it observed that Suzanne's use of $127,000 to purchase the new home and furnish it was reasonable under the circumstances of the case. While we endorse consideration of Suzanne's assets under section 4801, subdivision (a)(3), we also believe the trial court overstepped its bounds by using a 10 percent return. We believe it would have been within the court's discretion to consider the rate of return earned on the balance of the property division after purchase of the home. Such a calculation would not unduly hamstring Suzanne and not overburden Joseph, as well as take into account the mandate of section 4801, subdivision (a)(3). As the Court of Appeal observed in *In re Marriage of Fransen* (1983) 142 Cal.App.3d 419, 425 [190 Cal.Rptr. 885], "The court must not simply recognize the criteria set forth in section 4801, subdivision (a), it must apply them."[6]

## III

■ We find it was error not to order the wage assignment.

Section 4801.6, in effect at the time of the December 6, 1985, hearing provides in pertinent part: "[I]n any proceeding where the court has ordered a party to pay spousal support to the other party upon both a petition by the person to whom support has been ordered to have been paid and a finding by the court that the party so ordered to pay spousal support is in

---

[6] Suzanne contends on appeal the trial court ignored various criteria of section 4801, subdivision (a), in considering modification of support. We find it unnecessary to discuss these contentions since we are remanding the case and the trial court will review the entire financial situation of the parties as well as other factors in its consideration of the request for modification of spousal support.

arrears in payment in a sum equal to the amount of two months of such payments within the 24-month period immediately preceding submission of such petition, the court shall order the defaulting party to assign either to the person to whom support has been ordered to have been paid or to a county officer designated by the court to receive such payment, that portion of the salary or wages of the party required to make such payment of spousal support as will be sufficient to pay the amount ordered by the court for spousal support." (Stats. 1982, ch. 497, § 19.)

The record clearly reflects Joseph in arrears for three months: July, August, and September, 1985.[7] Yet, when Suzanne's counsel asked for a wage assignment, the trial court refused, saying: "There has to be a finding he hasn't paid support as ordered, and I don't make that finding."

The trial court erroneously implied a "willful failure to make ordered payments" in section 4801.6. The statute, however, has no such provision. Whether Joseph acted in good faith in accumulating three months of arrearages is immaterial in applying section 4801.6.

The trial court has failed to perform its mandated judicial duty under section 4801.6. Upon remand, the trial court must make the wage assignment order unless the parties have resolved this issue otherwise between themselves.

## IV

 Suzanne was entitled to reasonable attorney fees.

---

[7] The record indicates the following discussion occurred between the trial court and counsel at the December 6, 1985, hearing: "The Court: When did the $2,500-a-month payments cease?

"[Joseph's Counsel]: The last payment he made was for the month of June, your Honor, a month after she received the money.

"The Court: You stopped July and August before you filed your motion?

"[Joseph's Counsel]: That's correct.

"The Court: . . . It's my belief what would be fair and equitable in this matter is all payments ordered by this Court prior to any request by respondent to have the Court make a determination should be paid at $2,500 a month, and the first hearing date would have been in this matter —

"[Suzanne's Counsel]: 9 October.

"The Court: 9 October, so as of that date, so for October, November and et cetera, the payments will be $1,000 a month.

"[Joseph's Counsel]: So for July, August and September it would be twenty-five?

"The Court: As ordered by the Court.

"[Joseph's Counsel]: And from October forward it would be 1,000?

"The Court: Right. . . ."

Section 4370, subdivision (d) provides: "Notwithstanding any other provision of law, absent good cause to the contrary, the court, upon determining an ability to pay, shall award reasonable attorneys' fees to a supported spouse in any action to enforce an existing order for spousal support."

Suzanne initiated the proceedings after Joseph stopped paying spousal support. It is clear these proceedings fit under section 4370, which is couched in mandatory language. Also, the phrase "ability to pay" in the statute most logically refers to Joseph's ability to pay. If the trial court finds on remand Joseph is able to pay for Suzanne's attorney fees, it must make the appropriate order.

## DISPOSITION

The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

Wiener, Acting P. J., concurred.

**WORK, J.**—I concur except for section III. The court specifically refused to make a finding Joseph failed to make payments as ordered. That is not an unreasonable position on the peculiar facts of this case where the interpretation of the court's prior order was in doubt because, as formalized, it appears inconsistent with earlier discussions where the court and counsel apparently believed Suzanne was to invest the bulk of $250,000 to produce income and purchase the small equity in the community condominium. Where the failure to pay is neither willful nor negligent but results from confusing orders of the court, there is no mandate to impose a wage assignment where it is clearly unnecessary to insure compliance and Suzanne's real concern was Joseph's propensity to insert the word "dole" on personal checks.