[Civ. No. 45255. First Dist., Div. Three. Mar. 20, 1980.]

HELEN SAMMUT, Plaintiff and Respondent, v.
JOSEPH SAMMUT, JR., Defendant and Appellant.

COUNSEL

MacInnis & Donner and James Martin MacInnis for Defendant and Appellant.

Schapiro & Thorn and Suzie S. Thorn for Plaintiff and Respondent.

OPINION

SCOTT, J.—Joseph Sammut, Jr., appeals from an order modifying his interlocutory judgment of divorce from Helen, increasing her spousal support, and awarding attorney's fees to the wife.

Appellant contends that the court erred in denying his request to inspect copies of respondent wife's state and federal income tax returns for several years immediately prior to the modification hearing. We conclude that in a proceeding for the modification of a spousal support award, the federal and state income tax returns of the parties are privileged and are not discoverable absent an agreement by the parties to the contrary.

We will defer a discussion of the facts until we reach appellant's contention that there was not substantial evidence to support the spousal support modification order.

Revenue and Taxation Code section 19282 provides: "Except as otherwise provided in this article, it is a misdemeanor for the Franchise Tax Board or any member thereof, or any deputy, agent, clerk, or other officer or employee of the state (including its political subdivisions), or any former officer or employee or other individual, who in the course of his or her employment or duty has or had access to returns, reports, or documents required under this part, to disclose or make known in any manner information as to the amount of income or any particulars set forth or disclosed therein." In *Webb* v. *Standard Oil Co.* (1957) 49 Cal.2d 509, 513 [319 P.2d 621], the California Supreme Court stated that inasmuch as the purpose of the statute is to encourage "a taxpayer to make full and truthful declarations in his return, without fear that his statements will be revealed or used against him for other purposes," the prohibition effectively creates a privilege, "and the privilege should not be nullified by permitting third parties to obtain the information by

adopting the indirect procedure of demanding copies of the tax returns." The court applied the privilege to both state and federal income tax forms because "forcing disclosure of the information in the federal tax return would be equivalent to forcing disclosure of the state returns and would operate to defeat the purposes of the state statute." (*Id.*, at pp. 513-514.) ■ The privilege against disclosure of income tax returns is recognized as a judicially created rule. (*Wilson* v. *Superior Court* (1976) 63 Cal.App.3d 825 [134 Cal.Rptr. 130]; *Miller* v. *Superior Court* (1977) 71 Cal.App.3d 145 [139 Cal.Rptr. 521].)

In *Sav-On Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1 [123 Cal.Rptr. 283, 538 P.2d 739], after discussing the privilege created by a similar section (Rev. & Tax. Code, § 7056), the court acknowledged that there may be circumstances under which discovery of tax returns would be permissible, when it stated (at p. 8): "It may be noted in conclusion that no attempt has been made herein to define the full ambit of the privilege considered above, nor are we called upon to determine whether under other circumstances discovery of tax returns and records would be permissible." Thus, the court laid the foundation for "judicially created exception[s] to the judicially created rule." (*Miller* v. *Superior Court, supra*, 71 Cal.App.3d at p. 148.) ■ Appellant urges here that a person should be able to obtain the income tax returns of a former spouse incident to a spousal support modification hearing as an exception to the judicially created privilege.

Courts have held that the privilege is waived or does not apply where (1) there is an intentional relinquishment (*Crest Catering Co.* v. *Superior Court* (1965) 62 Cal.2d 274, 278 [42 Cal.Rptr. 110, 398 P.2d 150]), (2) the "gravamen of [the] lawsuit is so inconsistent with the continued assertion of the taxpayer's privilege as to compel the conclusion that the privilege has in fact been waived" (*Wilson* v. *Superior Court, supra*, 63 Cal.App.3d at p. 830), or (3) a public policy greater than that of confidentiality of tax returns is involved (*Miller* v. *Superior Court, supra*, 71 Cal.App.3d at p. 149).

It appears that neither the first nor the second circumstance exists here which would give rise to a waiver of the privilege. There is no indication that the wife intentionally relinquished her privilege of confidentiality. There was no agreement to that effect at the time of the property settlement and the spousal support agreement made incident to the interlocutory decree. No other circumstances appear to us or are

urged by the parties which would suggest an intentional relinquishment of the privilege.

Nor does the second circumstance, as discussed in *Wilson, supra*, pertain to a spousal support modification proceeding. In *Wilson*, such a finding was made where a taxpayer brought suit against the accountant who allegedly had negligently and improperly handled certain tax problems for her. Pointing out that the plaintiff's complaint "placed in issue the existence and the content of her tax returns and the tax consequences of the computations thereon," the court held that the lawsuit was inconsistent with continued assertion of the privilege and that the privilege was therefore waived. (63 Cal.App.3d at p. 830.) That case is not applicable here, where the wife's income tax returns were not at issue.

Appellant's contention rests on the assertion that there is a public policy greater than that of confidentiality of tax returns in a case where there is a dispute as to spousal support in modification proceedings. Appellant relies principally on the rationale of *Miller v. Superior Court, supra*, 71 Cal.App.3d 145. In *Miller*, a wife sought to enforce payment of child support. She declared that her former husband was $6,340 in arrears. Husband testified that he was unable to provide any support for his three children. However, husband opposed wife's motion for order for production and inspection of federal and state tax returns filed by husband for the past six years. The court held that the policy favoring the confidentiality of tax returns "must give way to the greater public policy of enforcing child support obligations" (p. 149). However, in arriving at this conclusion, the *Miller* court noted that subsequent to the decision in *Webb*, the Legislature enacted Revenue and Taxation Code section 19286.5, which provides that the Director of Social Services or deputy directors may inspect income tax records of applicants or recipients of assistance and the *responsible relatives of such applicants or recipients* in order to verify or determine the eligibility or entitlement of an applicant for, or recipient of, public social services or the *obligation of a responsible relative.* The court concluded: "Although the children in the instant enforcement proceeding are not recipients of public social services, and thus are denied access to tax return information which may be disclosed to a public agency, the same policy considerations apply no less to parties attempting to enforce child support obligations by private means in order that the children who stand to benefit thereby may not become public charges." (*Id.*, at

p. 149.) It is clear that the *Miller* court had a legislative enactment directing its path to a conclusion that in child support cases, public policy favored disclosure of income tax records. No such legislative enactment reflects a similar legislative disposition in spousal support cases. We also note that the *Miller* court was careful to circumscribe the limits of their holding when they stated: "Our decision is limited to the narrow issue of the assertion of the privilege of nondisclosure of income tax returns in the context of proceedings to enforce child support obligations" (at p. 149).

The most recent tax return privilege case, *In re Marriage of Brown* (1979) 99 Cal.App.3d 702 [160 Cal.Rptr. 524], lends some guidance. In that case, a former husband sought an order modifying an interlocutory divorce decree so as to require the former wife to pay child support. The former husband sought the production of income tax returns filed by the wife's present husband. The court pointed out that the *Miller* court had carefully limited its decision, as we have quoted above, and concluded that the *Miller* rationale did not apply to this situation because the former husband was not seeking to *enforce* payment of arrearage under an existing order for child support, but was seeking to *modify* the interlocutory decree. The court further stated that the public interest in preservation of the marital relationship enunciated in the spousal privilege barred disclosure of the present husband's tax returns. As to this latter consideration, we observe the same result can occur in a *Miller* type case. Hence, that inhibiting factor does not appear significant to us. We are unpersuaded, however, that there are any real factors upon which to predicate the nonexistence of the privilege in the instant case. The Legislature has evidenced a greater public interest in assuring adequate child support as opposed to spousal support. (See, e.g., Civ. Code, § 4701 [providing for mandatory assignment of wages of defaulting spouse where child support payments are in arrears for a certain amount], and § 4811 [providing for modification or revocation of child support orders at the discretion of the court even when there has been an agreement between the parents].) Furthermore, there appear to be ample discovery methods available to ascertain income of former spouses which can be pursued, either in support of or in opposition to a motion to modify support. We conclude, therefore, that there are no public policy considerations which would permit discovery of income tax returns in litigation between former spouses in spousal support modification proceedings.

■ Appellant next contends that the evidence is insufficient to support the modification ordered by the court. The parties separated in

September of 1966, after 26 years of marriage. They were divorced in February of 1968, after having entered into a marital settlement agreement. The settlement agreement also included their two adult sons as additional contracting parties. The husband agreed to pay the wife $200 a month spousal support, which sum was subject to modification by the court upon a change of circumstances. The parties owned a business known as Artichoke Enterprises, Inc., the stock shares of which were divided equally. The wife agreed to sell her shares to her sons at the rate of $400 per month, the precise value of the shares to be determined each year by a certain formula. In consideration of the wife's agreement to sell her shares to her sons, the husband agreed to transfer all of his shares in the business in trust to the children, reserving for himself all voting rights and powers in connection with the shares of stock during his lifetime. In addition to spousal support, the buy-out income of $400 per month, and some $200 per month in dividends, the wife received $600 per month in salary from the corporation. She continued to work for the business in a clerical capacity. Her net monthly income was $637.90. Her total monthly expenditures were $1,451.29. The court ordered spousal support increased by $600 per month, to a total of $800. In addition to his income from the business in the amount of $1,840, the husband received $5,618 per month in dividends as the beneficiary of a life estate, the proceeds of an inheritance from husband's parents subsequent to the divorce. Husband contends that there is no substantial evidence to support the finding of changed circumstances. "The change of circumstance which authorizes a court to modify a support order means a change in the circumstances of the respective parties, i.e., a reduction or increase in the husband's ability to pay and/or an increase or decrease in the wife's needs." (*In re Marriage of Cobb* (1977) 68 Cal.App.3d 855, 860-861 [137 Cal.Rptr. 670].) In determining such ability or need, the court must consider, among other factors: "(1) The earning capacity and needs of each spouse; (2) The obligations and assets, including the separate property, of each; (3) The duration of the marriage;...(7) The standard of living of the parties; (8) Any other factors which it deems just and equitable." (Civ. Code, § 4801, subd. (a).)

There was evidence that the original support sum was set at $200 a month because the husband was putting most of the profits back into the corporation rather than taking a large salary. As a result, he had insufficient cash for the business to pay more than $200 a month. The wife's decision to forego higher spousal support was in part influenced by her interest in maintaining the value of the community property

shares of stock in the business. As a result of the income from the husband's inheritance, the husband no longer had a cash problem and was now adequately able to meet the wife's needs. This appears to be a sufficient showing of a change in circumstances to justify a modification of the order. The increase, although substantial, does not amount to an abuse of discretion. Appellant incorrectly includes in his argument as to spousal support received by the wife, the $400 a month from the buyout agreement. The wife received her stock pursuant to the division of the community property; hence, the $400 a month represented a sale of her capital assets. Appellant vaguely attempts to argue that the total financial arrangement made at the time of the interlocutory decree fixed the rights and liabilities of the parties permanently. It is clear, however, that the agreement provides for a modification of spousal support on change of circumstances. Therefore, the assertion that the increase in spousal support constitutes a departure from the structure of the original agreement is without foundation. We conclude that the court did not abuse its discretion in modifying the spousal support award.

■ Appellant's final contention is that the trial judge's award of attorney's fees and costs to respondent was not supported by substantial evidence. We find no merit to the contention. The wife's financial declaration shows her expenses exceed her income. On the other hand, the husband's ability to pay attorney's fees and costs is clear. In the absence of evidence to the contrary, this court assumes that the attorney's fees and costs were properly evaluated. Such award is addressed to the sound discretion of the trial court, and absent a clear showing of abuse, the trial court's determination will not be disturbed. (*In re Marriage of Harris* (1976) 65 Cal.App.3d 143 [134 Cal.Rptr. 891].)

Judgment is affirmed.

White, P. J., and Rhodes, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.