[No. B017912. Second Dist., Div. Three. June 17, 1987.]

In re the Marriage of BERNICE and DEWITT WHITE,
DEWITT WHITE, Respondent, v.
BERNICE WHITE, Appellant.

**COUNSEL**

Claire Boudov for Appellant.

Joan S. Bauman, Abrams & Kohn and Wendy L. Kohn for Respondent.

**OPINION**

**KLEIN, P. J.**—Appellant Bernice White (Bernice) appeals an order reducing spousal support paid by respondent Dewitt White (Dewitt).

Because the trial court did not consider Dewitt's pension income as a relevant factor in its modification of Bernice's spousal support, the order is reversed and the case remanded.

### PROCEDURAL AND FACTUAL BACKGROUND[1]

The parties married in 1954. For 17 years of their 23-year marriage, Dewitt worked for the City of Los Angeles as a sanitation engineer, all the while earning pension rights. Bernice operated a small beauty shop, a community asset. In June of 1964, the couple purchased a three-bedroom family residence on 7th Avenue in Inglewood. They separated in 1977 and Dewitt thereafter filed for dissolution. At the time of the interlocutory judgment in 1979, Dewitt and Bernice were 59 and 65 years of age, respectively.

At the 1978 trial, Bernice's expert valued Dewitt's pension at $97,500. Both experts valued the residence at approximately $60,000 less its encumbrance of about $18,000. Although the beauty shop was said to be worth $2,000, it had earned a net loss of approximately $2,300 in 1977 and was closed entirely three years later due to Bernice's arthritis.

After trial, the trial court issued a notice of intended decision which, in part relevant here, ordered a sale of the family home with equal division of the net proceeds, awarded Bernice "an interest in any benefits distributed to [Dewitt] by reason of his retirement plan" in proportion to the extent those benefits were earned during marriage, and provided for spousal support to Bernice in the amount of $575 per month.

---

[1] The record on appeal is augmented with the superior court file pursuant to California Rules of Court, rule 12(a).

The parties, however, rejected the trial court's recommendation and, instead, stipulated to a division of the community property by which Dewitt received "[a]ll rights, title and interest in, and to, his retirement plan with the City of Los Angeles, including, but not limited to all vested and future rights and interests therein and any and all benefits distributed to [Dewitt] by reason of his said retirement plan; ..." Bernice acquired the family home and the beauty shop.[2] She obtained spousal support of $287.50 "each month, ... continuing until either party dies, [Bernice] remarries, or further order of the Court."

In May 1983, Dewitt suffered a job injury, went on disability and retired later that year. On January 1, 1984, he began drawing pension benefits of $1,540 per month. In the spring of 1985, Dewitt stopped paying spousal support. Bernice obtained a writ for payment of arrearages and levied against Dewitt's pension income.

Dewitt filed an order to show cause to terminate spousal support and to recover the pension monies paid on arrearages asserting Bernice had exchanged "any and all rights to [his] retirement" for the family home "as part of [their] property settlement agreement." Bernice responded by seeking an increase in spousal support as well as attorney's fees and costs, claiming Social Security benefits as her sole source of income. Dewitt had remarried and his new spouse's income was approximately $200 a month. Bernice continued to reside in the family home with an adult niece and a minor grandniece. Bernice's financial declaration reflects the niece's gross monthly income to be unknown but shows the niece paid telephone and utility bills, apparently in lieu of rent.

At the October 21, 1985, order to show cause the parties stipulated Dewitt's monthly net income had increased since the granting of the interlocutory judgment from approximately $1,700 to $2,348, consisting of $288 from Social Security, $520 disability income and $1,540 from the pension. They also stipulated Bernice's income and needs had not changed.

After receiving these stipulations, the trial court reduced Bernice's monthly spousal support from $287.50 to $150 and ordered Dewitt to pay Bernice $250 as a contribution to attorney's fees.

CONTENTIONS

Bernice contends the trial court abused its discretion by refusing to consider Dewitt's monthly receipt of pension benefits for the purpose of determining his ability to pay spousal support. She claims the only evidence of

---

[2] While there appears to be some question as to whether the stipulation achieved an equal division of the parties' community property interests, neither party raises the issue on appeal.

any change in circumstances required an increase rather than a reduction of that award.

## DISCUSSION

1. *Separate property pension benefits are properly considered for support purposes.*

a. *Property division versus spousal support.*

■ Both Bernice and Dewitt acknowledge Dewitt received the pension as his "sole and separate property," and for that reason, it is no longer a community asset to which Bernice has an "absolute right." (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 848 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) ■ However, Bernice is not claiming entitlement as co-owner, but asserts the monthly pension payments constitute income to Dewitt which must be considered when assessing his ability to pay spousal support.

■ In this regard, it must be kept in mind that spousal support considerations are separate and distinct from property division concepts. Because the division of community property is premised on absolute ownership of community assets by both parties, each must receive a respective full share. An award of spousal support, in contrast, is broadly *discretionary*. This discretion is codified in the Family Law Act, Civil Code section 4801, which provides: " 'In any judgment decreeing the dissolution of a marriage ... , the court may order a party to pay for the support of the other party any amount, and for any period of time, as the court may deem just and reasonable....' " (*In re Marriage of Davis* (1983) 141 Cal.App.3d 71, 77 [190 Cal.Rptr. 104].)

The statute also sets guidelines and objective standards which the court must consider in exercising its discretion, including, " '... (1) The earning capacity of each spouse, ... [¶] (2) The needs of each party. [¶] (3) The obligations and assets, including the separate property, of each. [¶] (4) The duration of the marriage. [¶] .... [¶] (9) Any other factors which it deems just and equitable....' " (*In re Marriage of Teegarden* (1986) 181 Cal.App.3d 401, 407 [226 Cal.Rptr. 417].)

Whereas the respective property rights of the parties must be finalized at dissolution, there is no such requirement governing spousal support. To the contrary, because spousal support is a consideration of equity and not of absolute right, jurisdiction should be retained to modify its terms, especially after a lengthy marriage. (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41].)

b. *The "double-counting" fallacy.*

■ Dewitt contends the parties' property division agreement removed the pension from the trial court's jurisdiction. Otherwise, he urges, Bernice will twice receive the benefit of the pension, once upon dissolution and again for spousal support. This, according to Dewitt's reasoning, is "double dipping." Although Dewitt's argument may have a superficial appeal, it is inherently unsound.

■ "Double counting" of a pension occurs only on those occasions when jurisdiction is reserved over the pension, and it is divided "in kind" as payments fall due.[3] "Then each spouse is, properly speaking, an owner of a portion of those benefits and it would be incorrect to attribute the whole to either spouse for alimony determination purposes. When, however, all marital property division is effected at divorce and one spouse is awarded the entire pension, it is not in any way improper to consider the pension benefits as entirely [the supporting spouse's] income for purposes of alimony determination. Some courts have not understood this. [Fn. omitted.]" (Blumberg, Intangible Assets: Recognition and Valuation, 2 Valuation and Distribution of Marital Property (J. McCahey ed. 1984) ch. 23, § 23.02[3], § 23.02[4], pp. 23-15, 23-16.)

Blumberg further observes, "[i]t is possible, without committing the error of 'double counting,' [fn. omitted] to treat a pension as marital property, award it entirely to the earner spouse (with an offsetting award of marital property to the nonearner spouse) and then to take the earner spouse's receipt of pension benefits into account in determining whether there should be any alimony award to either spouse." (Blumberg, Intangible Assets: Recognition and Valuation, *op. cit. supra,* at p. 23-15.)

c. *Implicit rejection of Dewitt's "double-counting" theory in existing case law.*

Our Supreme Court in *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 91, at footnote 14 [154 Cal.Rptr. 413, 592 P.2d 1165], rejected a contention similar to that made by Dewitt here. In *Epstein,* the earner spouse complained that continuation of spousal support beyond his retirement would "conflict with the equal division of community property requirement of Civil Code section 4800, subdivision (a)." (*Ibid.*)

---

[3] Even when jurisdiction is retained over pension property for administrative purposes, such retention is only after percentages are set as to the distribution of each payment, and, if necessary, for the creation of a formula taking postseparation contributions into account. (*In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 756-757 [214 Cal.Rptr. 661].)

*Epstein,* however, approved using former community property as a source for spousal support: "Moreover, even if a future award of spousal support must come from husband's half of the community property there is no requirement excluding such property as a source of that support. As the Court of Appeal below noted, 'in every case where one spouse receives permanent spousal support from the other spouse, the source is from the separate property of the paying spouse, including . . . earnings or property which were once the community property of both spouses.' "[4] (*Ibid.*)

Other cases have reached similar results. In *Verner* v. *Verner* (1978) 77 Cal.App.3d 718 [143 Cal.Rptr. 826], the trial court divided husband's community property retirement fund in kind awarding $8,906 of the accumulations to each party. The judgment indicated, " '[t]his fund shall be used towards satisfaction of [husband's] obligation to support the [wife]' . . . ." (*Id.,* at p. 724.) The appellate court conceded this language was "subject to various interpretations" but rejected as unreasonable husband's assertion the support payments were intended to "somehow constitute liquidation of the $8,906 sum, to totally discharge his obligation . . . ." (*Id.,* at p. 725.) Concluding the judgment "merely sought to identify the probable source of [husband's] support payments at some future time, and nothing more" (*ibid.*), the court, tacitly recognized the former community property retirement fund as a proper source for payment of support.

This court also by implication has condoned the dual allocation of a pension. *In re Marriage of Olivarez* (1986) 188 Cal.App.3d 336 [232 Cal.Rptr. 794], approved an award of spousal support, as well as attorney's fees and costs, from the supporting spouse's one-half share of a pension after it had been divided in kind between the parties. (*Id.,* at p. 343.)

In summary, the cases of *Epstein, Olivarez* and *Verner,* as well as Professor Blumberg's treatise, each *assumed* the propriety of considering a pension both as community property *and* as the basis for awarding spousal support.[5] We are therefore emboldened to conclude the income from Dew-

---

[4] We note *Epstein's* quotation from the vacated opinion of the Court of Appeal stopped one sentence short of including reference to the fact the retirement income at issue there was, like here, a pension. Because "facts stated in an appellate opinion . . . possess generally an assurance of accuracy and reliability" (*Weiner* v. *Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 46 [170 Cal.Rptr. 533], we make this observation but, mindful of the prohibition against citing or relying upon opinions not ordered published (Cal. Rules of Court, rule 977(a)), refrain from taking judicial notice of that decision as a precedent (Evid. Code, § 452, subd. (d)). (*People* v. *North Beach Bonding Co.* (1974) 36 Cal.App.3d 663, 673, fn. 9 [111 Cal.Rptr. 757].)

[5] See also Annotation, Pension of Husband as Resource Which Court May Consider in Determining Amount of Alimony (1952) 22 A.L.R.2d 1421, which states: "As a general proposition, it has been held or stated in numerous cases that the pension of a husband may properly be considered as a resource in determining the amount of alimony to be awarded to the

itt's now separate property pension must be considered along with other appropriate factors when gauging his ability to pay just and reasonable spousal support. Failure to do so constitutes an abuse of the trial court's discretion.

## 2. *Modification of the support award.*

■ "The change of circumstance which authorizes a court to modify a support order means a change in the circumstances of the respective parties, i.e., a reduction or increase in the husband's ability to pay and/or an increase or decrease in the wife's needs [citation]." (*In re Marriage of Cobb* (1977) 68 Cal.App.3d 855, 860-861 [137 Cal.Rptr. 670].)

The parties here stipulated Bernice's monthly income and expenses had *not* changed since the last order; her expenses still exceeded her income by several hundred dollars. Notwithstanding Dewitt's physical hardship, his net income had actually increased from $1,700 to $2,348, including, as we must, the $1,540 attributable to the pension as available for support consideration.[6] ■ Because increased ability to pay is a proper basis for an increase in spousal support if the prior award were inadequate, regardless of whether the needs of the supported spouse have changed (*Sammut v. Sammut* (1980) 103 Cal.App.3d 557, 563-564 [16⊃ Cal.Rptr. 193]), the trial court erred in reducing Bernice's support on the instant factual showing.

## 3. *Dewitt's authorities inapposite.*

Dewitt claims two cases, *Sammut* and *In re Marriage of Rabkin* (1986) 179 Cal.App.3d 1071 [225 Cal.Rptr. 219], support his "double dipping" theory. Both cases treat a supported spouse's receipt of payments in liquidation of a fixed interest created upon the division of community property as receipt of a capital asset and exclude such receipts when calculating the supported spouse's need. In *Sammut,* the supported spouse received $400 per month pursuant to a buy out of community property stock. In *Rabkin,* the contested income took the form of $1,800 mortgage payments derived from the sale of the family residence which "constituted the single major asset awarded to wife as her one-half share of the community property." (*In re Marriage of Rabkin, supra,* 179 Cal.App.3d at p. 1081.)

wife." (*Id.,* at p. 1423.) Two additional cases, completely without comment, included in the funds available from which support could be paid military pension payments (*In re Marriage of Fransen* (1983) 142 Cal.App.3d 419, 424 [190 Cal.Rptr. 885]), and disability benefits (*In re Marriage of Webb* (1979) 94 Cal.App.3d 335, 345-346 [156 Cal.Rptr. 334]).

[6] Although the stipulation addressed only Dewitt's income, comparison of the expenses listed in his original financial declaration with those claimed at the time of the order to show cause, exclusive of the $287.50 spousal support obligation reflected in the latter, reveals very little change, despite his remarriage, disability or acquisition of a home.

However, in each case the supporting spouse had adequate income to pay reasonable support apart from that spouse's receipt of similar divided community property. In *Sammut,* the supporting spouse received an inheritance paying $5,618 per month,[7] and in *Rabkin,* the supporting spouse was a physician. Additionally, the parties in *Rabkin* expressly agreed "the sale of the marital residence could not be considered a change in circumstance justifying a modification of spousal support. [Fn. omitted.]" *(Id.,* at p. 1081.)

As the present case involves neither an agreement expressly to the contrary, nor a supporting spouse with sufficient ability to pay without considering the former community property source, both cases cited by Dewitt are distinguishable. In our view, these cases stand merely for the proposition that a supporting spouse cannot use the supported spouse's receipt of payments in liquidation of a community property division as a pretext to claim the supported spouse's reduced need.

Moreover, putting the foregoing factual distinctions aside, we perceive another persuasive reason requiring inclusion of Dewitt's pension income in the support equation. Unlike payments in liquidation of a fixed community property interest such as those created by the sale of stocks or real estate, a pension pays out a gross amount which, although constant, is presently unascertainable. That is to say, although a *present value* may be quantified by reference to life expectancy charts, the *actual value* of the pension cannot be computed until the payments, in fact, cease. If the pensioner's life exceeds the actuarial expectation, this eventual value may be far in excess of some earlier determined present value. Conversely, should the pensioner suffer an early demise, the value may be only whatever survivor benefit, if any, the pension provides.

Thus, we are confronted with an asset that is possibly sui generis in nature. As this inherent variation in actual value was a risk undertaken by Dewitt when he chose to keep the pension rather than give Bernice a proportionate interest in it as the trial court intended, we perceive no unfairness in treating the payments as income for the purpose of spousal support. Indeed, to do otherwise would engraft upon the parties' agreement a *Rabkin*-like exclusion which, contrary to Dewitt's assertion, they did not contemplate or express.

---

[7] We note the inheritance in *Sammut,* was, like Dewitt's pension, the supporting spouse's separate property but nowhere is it suggested such income should be exempt from support consideration.

### CONCLUSION

In summary, we conclude the trial court reduced Bernice's award of spousal support by improperly exempting Dewitt's monthly pension payments from consideration for the purpose of determining his ability to pay.

### DISPOSITION

The order reducing Bernice's monthly spousal support is reversed. The matter is remanded for further proceedings consistent with the views expressed herein. Bernice to receive costs on appeal.

Lui, J., and Danielson, J., concurred.