Filed 8/25/15  Marriage of Fivash and Pepper CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re Marriage of LISA and RONALD PEPPER.<br><br>LISA FIVASH,<br><br>Appellant,<br><br>v.<br><br>RONALD PEPPER,<br><br>Respondent. | D065598<br><br>(Super. Ct. No. DN161179) |

APPEAL from a judgment of the Superior Court of San Diego County, Thomas R. Murphy, Judge (Ret.), Tamila Ipema, Judge.  Affirmed.

Linda Cianciolo, for Appellant.

Stephen Temko and Dennis Temko, for Respondent.

INTRODUCTION

Lisa Fivash (formerly Pepper) appeals a dissolution judgment contending the trial court erred in considering the amounts she received in a stipulated predistribution division of community property from her husband's business as her income when it

calculated retroactive temporary spousal support and child support. She also contends

the court erred in awarding certain credits to her husband, Ronald Pepper, and not

awarding her attorney fees. We conclude the court did not abuse its discretion and affirm

the judgment.

BACKGROUND

A

Lisa and Ronald[1] were married in 1990. Ronald, a commercial real estate agent,

is a partner in a real estate brokerage company, which helps retailers find sites for new

stores and assists shopping center landlords lease vacant space. Lisa stopped working in

early 1991 at Ronald's request. She gave birth to their daughter in 1993 and was the

primary caretaker for their daughter and the family home.

When Lisa and Ronald separated in June 2010, Lisa filed a petition for dissolution

of marriage requesting support, determination of property rights including use of the

family residence and valuation of Ronald's business, and attorney fees.

B

In September 2010, Lisa requested an accounting and division of commissions.

She advised the court Ronald had provided her with two payments totaling $15,000, but

claimed she had expenses of more than $19,000 per month. Ronald provided her the

community share of an asset they sold and told her to use that for her monthly living

expenses. Lisa contended Ronald was not providing her with adequate temporary

---

[1]    Because the parties are referred to throughout the record by a shared surname, we
refer to them by first name to avoid confusion. No disrespect is intended.

2

support and stated he was providing substantially less per month than he did before separation. Lisa stated Ronald earned a monthly salary of $15,000 in addition to his commissions. She requested an accounting of Ronald's commissions and immediate payment of her community share of commissions earned prior to separation.

Ronald responded saying if Lisa received her community share of commission income earned prior to separation, this would be a property distribution and should be deducted from his income earned since separation when the court determined support. Ronald also noted Lisa had no mortgage expense for the family residence, her vehicle was paid for and she had no credit card debt. Ronald disputed Lisa's claims regarding the amount of liquid assets available and her claim he was not cooperating with documents needed for the business valuation.

In reply, Lisa disputed Ronald's claims of uncertainty regarding his income and estimated commissions for calculation of support. She asked the court to consider pending distributions to Ronald and estimated income for the remainder of the year. She also asked the court to consider his past earnings since she believed he was not accurately disclosing his income. Lisa agreed the family home did not have a mortgage, but it required property taxes and insurance. She also stated their daughter's educational expenses included horses, lessons, training and shows. In addition, their daughter had school expenses for books, supplies, uniforms, parking permit and lunches.

Lisa reiterated her request for her share of commissions because she believed Ronald was not providing enough support to cover her monthly expenses. She stated, "If I receive this money as a property distribution, I am aware it will not be considered

3

income to [Ronald]. Therefore, as an alternative to setting support as described above I am requesting the court set support based on the $15,000 salary each month and split all distributions received between the parties evenly until a review hearing on this matter." She also requested a contribution to her attorney fees.

C

Based on a stipulation reached by the parties in October 2010, the court issued findings and an order. The court ordered Ronald to pay Lisa "$17,000 per month until further order of the [c]ourt or written agreement of the parties, with the [c]ourt retaining jurisdiction to characterize these payments as spousal support, child support and pre-distributions of community property." The court ordered Ronald to pay the property taxes and insurance on the family home, retaining jurisdiction to characterize these payments as support or predistributions of community property. Each party was ordered to pay half of their daughter's school expenses and medical expenses not covered by insurance.

The court set a hearing to reallocate and/or characterize all funds paid by Ronald to Lisa. The court also indicated the parties' joint forensic accountant was to "provide an opinion on the reallocation/characterization of sums paid" by Ronald to Lisa. The court ordered payment to each party's attorney from community property funds. The parties stipulated to the appointment of Thomas Murphy (ret.), a privately compensated temporary judge (Cal. Const. art. IV, § 21; Cal. Rules of Court, rules 2.830-2.834), to decide the matter.

4

D

Judge Murphy (hereinafter "the court") issued an order on January 3, 2012, adopting the conclusions of the parties' joint forensic accountant. Ronald received community commissions in 2010 of $637,399, and community commissions in 2011 of $532,454. The court ruled Lisa was entitled to half of these commissions.

Of the $96,000 paid by Ronald to Lisa ($17,000 per month from July 2010 through December 2010), the court allocated $11,024 as child support and the remaining $84,976 as a predistribution of community property with no spousal support ordered for this period. Of the $102,000 paid from January 2011 through June 2011, $36,012 was allocated as spousal support and the remaining $65,988 was allocated as a predistribution of community property.

Ronald was charged with owing Lisa $30,672 ($5,112 per month), as retroactive spousal support for the period of January through June 2011. With respect to spousal support after July 2011, the court indicated it did not know "what community commissions have been or will be paid after [July 1, 2011]." The court was "faced with the same predicament that faced the parties when they entered in to the October 23, 2010 stipulation, i.e. with the exception of the $15,000 per month wages received by Ronald, how much more in commissions will be paid and what will be their character." Therefore, the court ordered the prior stipulated order for Ronald to pay Lisa "the unallocated sum of $17,000 per month shall continue through April 1, 2012 . . . with the [c]ourt retaining jurisdiction to characterize the payments as spousal support and/or pre-distributions of property retroactive to July 1, 2011."

5

The court stated Ronald would be entitled to request credits for his payment of postseparation property taxes and homeowner's insurance "in the final division of property herein." Lisa, who was to be responsible for future property tax payments, would also be entitled to credits in the final division of property.

The court also stated Ronald would be entitled to credits for payments made to counsel and to the joint accountant. All other requests for reimbursements were reserved for trial. The court ordered Ronald to pay attorney fees for both parties from a business account, with the court retaining jurisdiction regarding the final allocation.

E

After multiple hearings and two trials at which the joint forensic accountant and separate experts testified, the court issued a statement of decision. The court set forth the October 2010 stipulation of the parties for Ron to pay Lisa $17,000 per month with the court retaining jurisdiction to characterize the payments as support or predistributions of community property.

The statement of decision noted the parties requested the court in November 2011 "[a)] to consider what portion of monies received by Ronald [as] accounts receivable and work in progress were community; b) calculate what the support orders would have been assuming the monies received had been divided; c) consider the fact that the parties had filed joint income tax returns; d) and then determine what portion if any of the $17,000 per month payments to Lisa were a predistribution of community property." The same process was used by the parties, experts and the court to allocate payments through trial.

6

The court noted Lisa's counsel objected, for the first time in closing arguments, to the court's "characterization of the $17,000 payments to Lisa."  The court stated, "Notwithstanding the above stipulation (October 13, 2010) and in particular, paragraph numbered 4 therein, Lisa's counsel object[ed] to what his client agreed to . . . and to what a substantial amount of time was spent on during the November-December[] 2011[] Order to Show Cause and the October[] 2012 - January[] 2013[] trial."  The court overruled Lisa's objections stating "Lisa requested and stipulated, that she be given her community property half of the commissions received by Ronald.  The sum of $17,000 per month was agreed to be given to her with the [c]ourt determining what portion a property distribution; what portion support."

After obtaining more information from the parties and their forensic accountants, including tax on various items, the court allocated $511,861 as commissions due to Lisa from July 2010 through February 2013, $272,955 as retroactive spousal support due to Lisa from January 2011 through February 2013, and $13,960 as child support due to Lisa for July through October 2010.  Lisa owed Ronald $23,868 in child support from the end of October 2010 through June 2011 for the period of time their daughter lived with him before she reached the age of majority.[2]

---

2    Lisa's agreement to this allocation was conditional on her standing objection to the court's interpretation of paragraph 4 of the October 13, 2010 stipulation.

7

After considering the factors set forth in Family Code[3] section 4320, the court ordered Ronald to pay Lisa $19,500 per month for spousal support beginning March 1, 2013. The court gave Lisa the option of being awarded the family residence at a fair market value of $2,550,000. However, she determined she could not afford it and the property was sold. The proceeds were used for equalization payments.

The court concluded the fair market value of the community interest in Ronald's business was $1,220,000 as of June 30, 2010. The court noted Lisa received, as recognized by the court's allocation, $513,800 in predistribution of the community interest. Ronald was to be charged $706,200 for the award of the business.

The court awarded Ronald *Watts* credit[4] for Lisa's exclusive use of the family residence after separation. In making the award, the court considered a number of factors, including the fact the support order did not take into account Lisa had no rent or mortgage payment. The court charged Lisa with $266,000 at $9,500 per month from November 2010 through February 2013, which excluded the time their daughter lived with Lisa while the daughter was a minor.

---

[3]     Further statutory references are to the Family Code unless otherwise indicated.

[4]     *In re Marriage of Watts* (1985) 171 Cal.App.3d 366.

8

The court awarded Ronald *Epstein* credits[5] for payments he made for (1) the jointly retained forensic accountant who provided expert opinion regarding Ronald's income and the value of the business ($106,741.44); (2) the private judge ($50,978.76), (3) the marriage and family therapist for assistance with their daughter ($1,100), (4) the special master and the court reporter ($12,361), (5) the fee for preparation of 2010 tax returns ($1,000), (6) real property taxes ($33,092.32), (7) homeowners insurance ($9,052.88), and (8) medical and school expenses for their daughter ($686.45). The court denied credit for other expenses claimed by Ronald, such as repair costs for their daughter's Jaguar and expenses related to their daughter's horse.

The court awarded Lisa *Epstein* credits for (1) real property taxes and insurance ($16,330.74), and (2) plumbing and appliances for the family home post separation ($3,541.53). It denied her request for credit for other payments, such as maintenance of the property and life insurance premiums insuring Ronald's life.

The court denied each party's request for sanctions against the other. The court denied Lisa's request for additional attorney fees of $350,000 noting her counsel had been paid $38,500 more from a community source than had Ronald's counsel.

Lisa appealed the statement of decision on March 6, 2014. Judgment was entered on May 8, 2014, and we deemed the appeal to be from the judgment.

---

5    *In re Marriage of Epstein* (1979) 24 Cal.3d 76 (*Epstein*), superseded by statute on other grounds as stated in *In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1280.

DISCUSSION

I

*Allocation of Stipulated Post-Separation Payments and Support Orders*

Lisa contends the trial court erred when it considered the allocated division of the community business as her income when it calculated retroactive temporary spousal support and child support. She contends charging her with receiving community property and attributing the same amount to her as imputed income for purposes of support calculations was a reverse "double dip" and resulted in reduced support awards. Lisa asks us to reverse and remand for recalculation of child and temporary spousal support based on Ronald's receipt of his $15,000 per month salary plus the full amount of commissions he received (including her share). We are not persuaded.

A

*Guiding Principles*

We review temporary spousal and child support orders for abuse of discretion. (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327.) "We examine the challenged order for legal and factual support. 'As long as the court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it.' [Citations.] 'To the extent that a trial court's exercise of discretion is based on the facts of the case, it will be upheld "as long as its determination is within the range of the evidence presented." ' [Citation.] [¶] Where a question of law is presented on undisputed facts, appellate review is de novo." (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443.)

10

"Generally, temporary spousal support may be ordered in 'any amount' based on the party's need and the other party's ability to pay. [Citations.] 'Whereas permanent spousal support "provide[s] financial assistance, if appropriate, as determined by the financial circumstances of the parties after their dissolution and the division of their community property," temporary spousal support "is utilized to maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations." [Citations.]' [Citation.] The court is not restricted by any set of statutory guidelines in fixing a temporary spousal support amount. [Citation.] [¶] Rather, in exercising its broad discretion, the court may properly consider the 'big picture' concerning the parties' assets and income available for support in light of the marriage standard of living. [Citation.] Subject only to the general 'need' and 'the ability to pay,' the amount of a temporary spousal support award lies within the court's sound discretion, which will only be reversed on appeal on a showing of clear abuse of discretion." (*In re Marriage of Wittgrove*, *supra*, 120 Cal.App.4th at p. 1327.)

B

*Cases Considering Double Counting Issue*

In the case of *In re Marriage of Marx* (1979) 97 CalApp.3d 552, 561, a husband contended it was error to include accounts receivable in the valuation of his medical corporation because would it give the wife "half of the accounts receivable in the distribution of the community property, and then [would give] her the other half or a substantial portion thereof via spousal and child support." The court disagreed stating,

11

"Wife had a community interest in the accounts receivable existing on the date of separation, and by including them in the valuation of the business, her interest is protected.  Child and spousal support must be based upon the supporting spouse's future earnings or income. 'Following separation, the preferred source for payment of support is the separate property of the supporting spouse that would have been community property if the spouses were not separated.' "  (*Id*. at p. 561.)  In so holding, the court rejected the husband's argument child and spousal support should be paid from community cash on hand before he was required to pay spousal support from his separate property.  (*Ibid.*)

*In re Marriage of White* (1987) 192 Cal.App.3d 1022, concluded there was no double counting error in awarding a pension to one spouse in the division of community property and then considering the pension benefits derived from that former community property as separate property to be considered in evaluating that spouse's ability to pay spousal support.  (*Id.* at pp. 1027-1029.)  " ' "[I]n every case where one spouse receives permanent spousal support from the other spouse, the source is from the separate property of the paying spouse, including . . . earnings or property which were once the community property of both spouses." ' "  (*Id*. at p. 1028.)

The cases cited by Lisa from other states do not conflict with these authorities. For example, *Hommel v. Hommel* (1991) 162 Wis.2d 782, 784 [471 N.W.2d 1, 1] considered whether income derived from investment assets awarded to a spouse in the division of property in a divorce settlement should be included in calculating that spouse's income for purposes of revising a spousal support award.  The *Hommel* court

12

concluded this did not violate the rule against double counting.  (*Hommel v. Hommel*, *supra*, 471 N.W.2d at p. 5.)

A more recent case from Wisconsin explained the rule against double counting does not typically apply to income earning assets such as investment property because the spouse receives the value of the property at the time of distribution.  The spouse may sell the property for its market value or keep the investment property and earn the income. Therefore, the value of the investment is separate from the income it generates. (*McReath v. McReath* (2011) 335 Wis.2d 643, 676 [800 N.W.2d 399, 416].)  The court distinguished investment income from pension benefit payments up to the present value of the pension awarded to a spouse in a divorce.  "[I]t would be double counting to count the present value of the pension as a divisible asset and also count the future payments as income, since the income, up to the valuation placed on the pension at the time of the division, are one and the same." (*McReath v. McReath*, *supra*, 800 N.W.2d at p. 415.) However, once the present value of the pension is reached, then the benefits could be considered income.  (*Ibid*.)  The *McReath* court cautioned against inflexible application of rules against double counting stating the focus should be on fairness.  (*McReath v. McReath*, *supra*, 800 N.W.2d at p. 416.)

C

*Application*

In this case, there is no dispute that Lisa was entitled to her community share of Ronald's business, valued at the time of separation.  The value of the community business

13

in this case did not include a future income stream, but only what had been earned at the date of separation.

Instead of obtaining temporary spousal support at the outset of the case and deferring collection of this community asset until the end of the case, Lisa asked to receive her half of community commissions when Ronald received the commissions on a monthly basis because she felt Ronald was not providing a reasonable amount of support.[6]   In making this request, Lisa acknowledged, "If I receive this money as a property distribution, I am aware it will not be considered income to [Ronald]."

This understanding comports with the law discussed above.  To require Ronald to pay Lisa her portion of the community commissions and then pay spousal support based on all of the community commissions received (both her portion and his portion) would result in an improper double dip into his share of the commissions.

Although Lisa repeatedly states on appeal she did not actually receive the community commissions, she did receive fixed payments of $17,000 per month until the time of trial which totaled $521,000.  These monthly payments necessarily included funds Ronald obtained from distributions of community commissions, particularly in the initial months.  Lisa agreed the court retained jurisdiction "to characterize these payments as spousal support, child support[,] and pre-distributions of community property."  Lisa had the option of using these monthly payments for living expenses or for investment in other assets.

---

6      Lisa initially requested $19,000 per month in temporary spousal support and $4,870 in child support.

With the assistance of the joint forensic accountant and separately retained economic experts, the court undertook a thorough evaluation of Ronald's business income, including an evaluation of the community commissions received by Ronald after the parties' separation. Based on the evidence presented by way of reports, testimony and visual aids submitted by the parties, the court ultimately allocated $513,800 of the monthly payments Lisa received as her portion of community commissions. The court awarded retroactive spousal support to Lisa totaling more than $270,000 for the period from January 2011 through February 2013. The court awarded retroactive child support to both Lisa and Ronald based on the time their daughter lived with each of them after separation until she reached the age of majority.

In reaching the allocations for retroactive temporary spousal support and child support, the court did consider Lisa's allocation of the community commissions as her income for purposes of evaluating her need. It also considered Ronald's share of commissions along with this monthly salary to determine his ability to pay. The court noted the majority of Ronald's 2010 income after separation and his income through June 2011 consisted of commissions completed at separation, i.e. the community property. The court determined Ronald and Lisa's income in the initial months after separation was nearly equal. As the portion of community commissions Ronald received dissipated over time and converted to his separate property commissions, the court accordingly adjusted the spousal support awards.

15

These facts are distinguishable from the case of *In re Marriage of Burkhart* (1986) 180 Cal.App.3d 198, 201, in which the husband made informal support payments to the wife and then sought credit for the payments when the court distributed the community property. The court denied the request for credit because it determined there was an implicit agreement by the parties the payments were for support and, absent an agreement to the contrary, the payments were deemed to have been made from separate property. (*Id.* at pp. 203-204.) To hold otherwise, the court concluded, would have resulted in a "joke" on the wife because it would have meant she paid for her own support from the community asset. (*Id.* at p. 205.)

There was no joke on an unsuspecting party here. The parties agreed to fixed monthly payments, which they also agreed the court would later characterize as support or distribution of property. Lisa understood her portion of predistribution commissions would not be deemed income for Ronald in calculation of support. The court faithfully undertook the effort to characterize the payments. It then awarded retroactive temporary and child support based on evidence of the needs and ability to pay of the parties. We find no abuse of discretion.

## II

### *Epstein Credits*

Both spouses have an equal interest in community assets (§ 751) and a trial court is obligated to divide community assets equally between the parties upon a dissolution of the marriage (§ 2550). Generally, debts incurred after the date of marriage but before the date of separation must also be divided equally. (§ 2622, subd. (a).) The court has

16

discretion to order one spouse reimbursed from community assets for community debts that the spouse paid from separate property after separation but before trial (*Epstein* credits). (*Id*., subd. (b); *Epstein*, *supra*, 24 Cal.3d at pp. 84-85.) A spouse is generally entitled to *Epstein* credits unless the payment was in reality a discharge of the paying spouse's duty to pay support to the other spouse. (*Epstein*, at pp. 84-85; § 2626.) Whether to award *Epstein* credits and in what amount is left to the trial court's discretion based on equitable considerations consistent with an equitable distribution of the community property. (*In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1272.)

The court awarded Ronald a number of *Epstein* credits for some postseparation payments he made. Lisa challenges five of these credits contending Ronald did not adequately trace the source of payment for these litigation charges to separate funds: (1) the joint forensic accountant, (2) the private judge, (3) the special master, (4) the court reporter, and (5) the social worker. Ronald disagrees contending any community funds in the accounts used to make these payments were exhausted based on Lisa's receipt of her portion of the community commissions and court-awarded support. By process of elimination, Ronald argues, the only source for payment of the challenged litigation charges was Ronald's separate property. We agree with Ronald.

"A spouse is entitled to reimbursement for payment of community obligations only if those payments are made from the spouse's separate property." (*In re Marriage of Prentis-Margulis & Margulis*, *supra*, 198 Cal.App.4th at p. 1281.) Commingling of community and separate property funds creates a presumption the funds in the account are community property. The presumption can be overcome "employing traditional

17

family law tracing methods, such as direct tracing or the family expense method of tracing. (*Ibid.*) "Commingling of separate and community property does not alter the status of the separate property interest so long as it can be traced to its separate property source. [Citation.] Whether the spouse claiming a separate property interest has adequately met his or her burden of tracing to a separate property source is a question of fact and the trial court's holding on the matter must be upheld if supported by substantial evidence." (*In re Marriage of Cochran* (2001) 87 Cal.App.4th 1050, 1057-1058.)

There was no evidence of direct tracing in this case. Therefore, we examine whether or not there is substantial evidence to support the family expense method of tracing. The family expense method of tracing is "based upon the presumption that family expenses are paid from community funds." (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 612.) If it can be shown the community income in a commingled account has been exhausted by family expenses at the time of payment, then payments from this fund were necessarily from separate funds. (*Ibid*; *In re Marriage of Cochran*, *supra*, 87 Cal.App.4th at p. 1058.)

Ronald testified the account he used to pay the litigation charges contained his salary and commissions (both community and separate). However, he also used that account for Lisa's $17,000 monthly payments, which the court determined resulted in a complete pre-distribution of her community share of the business along with spousal support. Therefore, there was substantial evidence the remaining funds in the account had to have been separate property funds. We conclude the trial court did not abuse its discretion in awarding Ronald *Epstein* credits for the expenses related to this litigation.

18

III

*Watts Credit*

Lisa next contends the court erred in charging her with reimbursement to the community for the reasonable rental value of the family residence, which she exclusively occupied after separation, because she does not believe there was substantial evidence to support the trial court's determination the reasonable rental value of the home was $9,500 per month. We do not agree.

" ' "Where one spouse has the exclusive use of a community asset during the period between separation and trial, that spouse may be required to compensate the community for the reasonable value of that use." [Citation.] The right to such compensation is commonly known as a "*Watts* charge." ' " (*In re Marriage of Boblitt* (2014) 223 Cal.App.4th 1004, 1011, fn. 3.) A decision to impose a *Watts* charge is within the broad equitable discretion of the trial court and we review that decision for of abuse of discretion. (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 818-819.)

The court recognized Lisa had exclusive use of the community residence, "a $2,500,000 +/- unencumbered community asset . . . which allegedly has a reasonable rental value of $9,500 per month." The court had before it, an appraisal report setting forth $9,500 as the estimated fair market monthly rental value. Ronald also testified the

rental value of the home was between $9,000 and $10,000 per month based on his experience regarding real estate in the area.[7]

In its statement of decision, the court noted it had not adjusted the retroactive support award to reflect the fact Lisa had use of the 6,700 square foot home, without rent or mortgage, while Ronald had been living in a three-bedroom rental property he paid for with separate funds. The court stated, "[c]onsidering the evidence presented and counsels' arguments, the [c]ourt finds Lisa shall be charged for the use of the . . . residence the sum of $9,500 per month for the period November 2010 through February 28, 2013; i.e. excluding the daughter's minority and while living with Lisa." We also note the court granted Lisa *Epstein* credits for the property taxes, insurance, and repair expenses she paid for the community residence post separation. Based on this record, we cannot conclude the court abused its discretion in imposing the *Watts* charge.

IV

*Attorney Fees*

Lisa contends the court abused its discretion in declining to award her a contribution of $350,000 from Ronald for her attorney fees because his financial condition is better than hers. We disagree.

"In any proceeding subsequent to the entry of a dissolution judgment, 'the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the

---

[7]     An owner of property may testify regarding its value. (Evid. Code, § 813; see also *In re Marriage of Jeffries* (1991) 228 Cal.App.3d 548, 551, fn. 3.)

20

income and needs assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding.' (Fam. Code, § 2030, subd. (a)(1); see *In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768 [the purpose of a pendente lite attorney fees award is to provide a party, where necessary, with adequate funds to properly litigate the controverted issues].)  [¶]  In determining whether to award attorney fees, the court must consider the parties' respective needs and incomes. [Citation.] The court is not limited to considering the parties' salaries. The court may also consider all evidence of the parties' income, assets and abilities. [Citation.] The decision to award attorney fees is left to the court's sound discretion. [Citation.] We will not disturb the award on appeal absent a clear showing of abuse, e.g., a clear showing no judge could have reasonably made the award." (*In re Marriage of M.A. & M.A.* (2015) 234 Cal.App.4th 894, 902-903.)

In this case, the court considered not only the income of each party, but also the community assets available and the amounts already paid for attorney fees for each party from these community assets.  The court concluded Lisa's counsel had been paid $323,500 in attorney fees from a community source, which was $38,500 more than Ronald's counsel had been paid from a community source.  Under the circumstances, the court declined to order Ronald to further contribute to Lisa's attorney fees.  We conclude the court acted within its discretion.

21

DISPOSITION

The judgment is affirmed.  Ronald shall recover his costs on appeal.


McCONNELL, P. J.

WE CONCUR:


BENKE, J.


HALLER, J.

22